### 15368

CHARLES v. TEXAS CO. *ET AL.*

(18 S. E. (2d), 719)

158

September, 1940.

*Messrs. Tompkins & Tompkins,* of Columbia, *Mr. P. D. Barron,* of Union, and *Mr. A. A. L. Morgan,* of Amarillo, Texas, of counsel, for appellants The Texas Company and H. G. Ezelle,

*Messrs. Barron, Barron & Walker,* of Union, appeared for appellant G. B. Lynch.

*Messrs. Bryan & Mozingo,* and *Mr. Samuel Want* of Darlington, *Messrs. Hughes & White,* and *Messrs. Young & Long, of Union,* and *Mr. Donald Russell,* of Spartanburg, for respondent,

Counsel for appellants, The Texas Company and Ezelle, in reply brief,

Counsel for appellant Lynch, in reply brief,

February 5, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE STUKES.

This action, in which the plaintiff sought damages in the sum of two hundred and fifty thousand dollars alleged to have been suffered by him as the result of various illegal and wrongful acts alleged to have been committed by the defendants pursuant to an unlawful conspiracy, was commenced by service of summons and complaint upon the defendants on November 3, 1938.

Within time the defendants moved to strike certain allegations from the complaint, and also to make the same more definite and certain in several particulars. These motions were heard at the fall, 1938, term of the Court of Common Pleas for Union County by Honorable William H. Grim-

ball, Circuit Judge and were overruled by him by order dated April 4, 1939. Upon appeal to this Court said order was affirmed. *Charles v. Texas Company et al.,* 192 S. C., 82, 5 S. E. (2d), 464; in this report the complaint appears in full.

Defendants, the Texas Company and Ezelle, in due course filed their answer, admitting certain formal allegations, denying certain specific allegations, and denying generally all those allegations charging them, or either of them, with being parties to any unlawful conspiracy or unlawful acts.

Defendant Lynch filed a separate answer, admitting the formal allegations, admitting the allegations that plaintiff and said defendant entered into a partnership agreement for the handling and selling of petroleum products in the County of Union, and that said partnership continued until about July 21, 1938, when same was dissolved. In his answer he admitted also the execution of a commission and consignment agreement with defendant, the Texas Company, to handle and sell the latter's petroleum products in said county, and admitted that it was agreed between plaintiff and said defendant Lynch that the said contract should be for the benefit of the partnership; that the partnership was dissolved and that the dissolution agreement was executed on July 21, 1938, effective July 31, 1938; that in the division of the assets of the partnership the lease on the White Way Service Station was allocated to plaintiff; that several stations trading with the partnership were allocated neither to plaintiff nor to the defendant; certain other allegations of plaintiff's petition were admitted by defendant Lynch in his answer, but he denied all allegations not expressly admitted.

Thereafter the cause came on for trial before Honorable E. C. Dennis, Circuit Judge, and a jury, at the September, 1940, term of the Court of Common Pleas at Union, and resulted in a verdict in favor of the plaintiff against all defendants in the sum of thirty-five thousand dollars actual damages, and forty thousand dollars punitive damages.

At the conclusion of plaintiff's testimony the defendants, the Texas Company and H. G. Ezelle, separately moved for a nonsuit, each of which motions was denied by the presiding Judge. The defendant G. B. Lynch did not move for a nonsuit.

At the conclusion of all the testimony the defendants, the Texas Company and H. G. Ezelle, jointly moved and the defendant, G. B. Lynch, separately moved for a directed verdict, each of which said motions was denied by the presiding Judge.

Motions for a new trial were duly made by the defendants and the presiding Judge granted a new trial unless the plaintiff should remit on the record fifteen thousand dollars of the punitive damages awarded by the jury. Thereupon the plaintiff duly remitted on the record fifteen thousand dollars of the verdict for punitive damages and judgment was entered upon the verdict, as reduced, in the amount of sixty thousand dollars.

From the judgment, orders and rulings entered in this cause by the presiding Judge, the defendants in due course perfected their appeal to this Court.

The foregoing is practically a copy of the statement contained in the transcript of record, the contents of which were prescribed by order of the trial Judge after the parties were unable to agree. The defendants also appealed from this action and argue that the Court erred in refusing to settle the "case" by ordering the adoption of the statement *in toto* which was proposed by the appellants and further erred in ordering the printing in the record of certain of plaintiff's exhibits which take up fourteen pages of the printed record of four hundred and ninety-four pages. The order of settlement of the transcript is properly printed in an appendix and upon study we find that the able and careful trial Judge rejected the separate statements proposed by the appellants and by the respondent and approved and combined portions of them, by which it appears upon consideration of the record that a fair and just result was reached.

Likewise we affirm his disposition of the contention concerning the inclusion of the exhibits in question. Despite the testimony about them, they shed light on their angles of the controversy and were properly printed in full. Appellants' exceptions relating to the settlement of the transcript are, therefore, overruled, and their question numbered XII resolved against them.

There are thirty-three exceptions made in behalf of the appellants, the Texas Company and Ezelle, and by a thirty-fourth they adopt the exceptions of the appellant Lynch. The latter has submitted nineteen separate exceptions and also adopts all of the exceptions of the other appellants, and then there is a single separate exception by Ezelle, individually, wherein he alleges error and abuse of discretion by the trial Court in failing to further reduce the verdict for punitive damages against him because of the lack of evidence of his financial status whereby the exemplary damages were excessive on the record and require a reversal of the judgment.

Very able and voluminous briefs have been filed separately by the appellants, the Texas Company and Ezelle, and by the appellant Lynch, wherein twelve questions are presented for all appellants by the two first named and one additional by the latter. It will be undertaken to treat and dispose of these questions in the order in which they have been stated in the briefs and necessary references will be made to the evidence. (Question XII is disposed or hereinabove.)

The first three may properly be considered together, as argued by appellants, for they question the sufficiency of the evidence for submission to the jury of the issues of (a) whether there was an unlawful conspiracy, (b) whether the defendants committed unlawful acts or lawful acts in an unlawful manner in pursuance of a conspiracy, and (c) whether the plaintiff suffered actionable damages.

The evidence is contained in full in the record and we have examined it with care. It reasonably tends to show that plaintiff was engaged in a partnership with the defendant Lynch in the distribution of petroleum products in Union and the

surrounding territory, the relation having commenced in 1926, with a written contract of partnership which provided for dissolution on thirty days notice by either partner. When the partnership was formed plaintiff was an experienced local gasoline dealer but Lynch was a newcomer to the community. After years of dealing with other companies the agency for the sale of the products of the Texas Company was undertaken in 1934. At the instance of the company the agency agreement was made in the name of Lynch but it was understood by all concerned that it was for the benefit of the partnership which conducted the agency, made the sales and deliveries and the profits were paid out in equal portions to the partners.

In 1938, the defendant Ezelle sought a private interview near the wholesale plant of the partnership with the partner, defendant Lynch, which lasted about three hours, after which Lynch informed the plaintiff that the Texas agency contract had been cancelled, the partnership would have to be dissolved and he (plaintiff) would have to find another occupation and there is testimony that Lynch threatened plaintiff with a receivership proceeding against the partnership if it were not amicably terminated. Plaintiff operated a separate roofing business, a corporation of which he and his wife were the owners, through which it appears that he disposed of roofing products of the Texas Company which he obtained on credit and the defendants contended that the amount of this approved credit had been exceeded by means of slow billing by the partnership and that the Texas Company through Ezelle demanded that Lynch promptly pay off this indebtedness to the company in performance of his guaranty as sales agent, and that on this account Lynch demanded of Charles the termination of the partnership relation. However, the accounts of the roofing company with the Texas Company were introduced in evidence and indicate a frequent prior exceeding of this credit limit and all of this and the other evidence upon the point properly made an issue thereabout for the jury.

Our task is not to find the facts or even weigh the evidence; these were for the jury in this, a law case, and they have concluded against the appellants. Our duty is only to ascertain whether in our opinion the trial Judge erred in submitting the issues to the jury, whether the evidence was susceptible of a reasonable finding for the respondent, and in our consideration we must view it most favorably to him. These axioms need no citation of authority.

After dissolution of the partnership was demanded by Lynch following the latter's long conference with Ezelle, plaintiff executed an instrument prepared by an attorney employed by Lynch and dated July 21, 1938, providing for termination of the partnership on July 31, under which agreement certain retail filling stations were allotted to plaintiff who it was contemplated would conduct a rival business, which he thereafter attempted to do; Lynch had paid the indebtedness of the partnership to the Texas Company and Charles assumed the payment of other partnership liabilities, all of which arrangements were definitely set forth and no question has arisen in this action with respect to the performance of the terms of the dissolution agreement. However, much of the evidence related to the subsequent price war waged by the parties, the plaintiff having entered the field with another product as a competitor of his former partner and of the Texas Company.

The defendant Ezelle was the agent and employee of the Texas Company, called "zone manager," his territory consisting of numerous counties apparently in portions of two states and he frequented Union in supervision of the conduct of the partnership in behalf of the business of the Texas Company. Beside his aforementioned activity there is evidence that he, as well as Lynch and at least one of the delivery truck drivers of the latter interfered with the rival business of plaintiff by interviews with some of his customers and prospective customers, slanderous statements concerning plaintiff and his products, threats that he would put plaintiff out of business by various means, would prevent his

purchase of petroleum products, and that he authorized and the company paid rebates, discounts and bounties in order to hold the Texas Company customers and secure plaintiff's customers.

There was testimony that in the interim between the execution of the dissolution agreement and its effective date, locks were changed on the office door of the wholesale plant of the partnership for the purpose of preventing plaintiff's entrance. Ezelle admitted that he suggested that course to Lynch and it is contended that it was justified in order to protect the documents of the partnership and the Texas Company from pillage by plaintiff. There was also evidence reasonably tending to show that during this period of change gasoline diluted with kerosene was delivered to some of the retail stations which plaintiff argues was done by Lynch and Ezelle to harm him in the business which he expected to do in competition with them and the Texas Company.

Some of the testimony as to derogatory and threatening statements concerning plaintiff by Lynch and Ezelle came from apparently disinterested witnesses, filling station operators, and some from delivery truck drivers of Lynch delivering products of the Texas Company. Another overt act relied upon by plaintiff was the billing to him by the Texas Company of equipment at retail stations taken over for service by him at prices alleged to be exorbitant and greatly in excess of the prices at which the same equipment was sold to the Texas Company by the partnership when it "went over" to the Texas Company in 1934. This is denied by the defendants and at least some of the bills were afterwards reduced and the defendants contend that this was immaterial because the plaintiff in fact never paid for the equipment and the indebtedness was finally met by the purchaser who took over plaintiff's business some months after the partnership dissolution for the indebtedness incurred by plaintiff for the petroleum products which he distributed. Likewise defendants rely upon the fact that the "price war" above mentioned was commenced by plaintiff.

Perhaps we have not covered all of the overt acts alleged by plaintiff and of which evidence was adduced by him, but we think we need go no further to conclude that the issues of the existence of the alleged conspiracy and the commission of acts pursuant thereto were properly submitted to the jury for their determination. The allegations referred to were denied and disputed in the evidence adduced by the appellants, but such merely sharpened the issues for decision of the jury; they were nevertheless for that tribunal.

Furthermore, we think that it cannot be reasonably contended that the evidence does not show damage to plaintiff. He testified without contradiction that the sales agency contract with the Texas Company was a valuable asset of the partnership and that the earnings were equally divided between himself and Lynch, and before the jury was also competent evidence of the quantities of the various petroleum products sold by the partnership and the rate of gross profits derived therefrom. More will be later said as to the sufficiency of the evidence to sustain the large verdict.

Appellants strongly rely upon the decision of this Court in the case of *Howle v. Mountain Ice Co. et al.,* 167 S. C., 41, 165 S. E., 724, 729, which is similar in some aspects, but it was held that the evidence was insufficient to establish an actionable conspiracy. However, it will be noted that the Court took pains upon consideration of the petition for rehearing to add to the decision the following significant language: "In this connection we should not be understood as holding that under no circumstances can an act resulting in damage, when done by two or more pursuant to an agreement, be actionable if a like act, when done by one alone, would not be actionable. The decision here is based solely, as indicated, upon the insufficiency of the evidence to show an agreement between the defendants for the purpose of injuring the plaintiff—the gravamen of the charge." Here, on the contrary, we find in the record of the evidence sufficient for submission to the jury for the determination of the issue of whether there was an agreement, a conspiracy, among

the defendants for the unlawful purpose of injuring the plaintiff.

The few other decisions of this Court touching the question of civil liability for conspiracy may be found by reference to 7 West's South Carolina and South Eastern Digest, Conspiracy, Key 1-23, pages 400-407. We quote from 11 Am. Jur., page 578: "For example, a combination which is lawful within itself may become a conspiracy when its object to ruin or damage the business of another * * *"; and from page 579: "A more reasonable view, however, is that where an act done by an individual, though harmful to another, is not actionable because justified by his rights, yet the same act becomes actionable when committed in pursuance of a combination of persons actuated by malicious motives and not having the same justification as the individual." See, also, 15 C. J. S., Conspiracy, § 10, p. 1006.

Appellant's next question complains in behalf of the Texas Company and Ezelle that the admission in evidence of the testimony of plaintiff to the effect that about eighteen months after the alleged formation of the conspiracy, Lynch told him that Ezelle hated the plaintiff and that in the long conference between them above referred to, and in several discussions they, Ezelle and Lynch, agreed to throw plaintiff out of business by two methods, first to tell him that the partnership agency contract with the Texas Company had been cancelled and second (presumably as a last resort) to place the partnership in receivership. The able counsel for the Texas Company and Ezelle objected to this testimony as to them expressly and the Court ruled that he would have to hear it and invited counsel to move thereafter for a further ruling as to its effect. This he did not do, but undertook to care for the situation by a request to charge the jury, as will be seen.

Other counsel (who also appeared for the Texas Company and Ezelle in association with chief counsel for the latter, just referred to) represented Lynch in the trial and in this appeal. No objection on his part was

made to the reception of this testimony which position was apparently advisedly taken by counsel for the law seems to be settled that there being some other evidence of a conspiracy, the subsequent declaration thereof by one of the alleged conspirators is admissible against him. *State v. Davis,* 88 S. C., 229, 70 S. E., 811, 34 L. R. A. (N. S.), 295. After the incident above related and of course before the Judge's instruction to the jury thereabout, in the examination of Ezelle as a witness by his counsel he was asked whether he had the alleged conspiratorial conversation with Lynch and upon examining counsel's suggestion that he desired to ask the question without waiving his objection (made as stated above in behalf of the Texas Company and the witness Ezelle) to the competency of the testimony, plaintiff's counsel stated in open Court, in the presence of Court and jury, that he agreed that "that testimony was not against Mr. Ezelle and the Texas Company, but will be evidence against Mr. Lynch." Thereupon the Court ordered that the question be asked and answered, which was done, and the witness denied making the statement. This seems to us a correct handling of the situation and one concerning which no just complaint can be made, and Court, jury and counsel must have thoroughly understood that the evidence of the declaration was admissible and admitted only against the defendant Lynch, who moreover had not objected to it.

However, the appellants' seventh request for instructions was as follows: "The jury is instructed that any statement by the co-defendant after the accomplishment, or attempted accomplishment of the purpose of an alleged conspiracy, as to whether or not there was such a conspiracy, and what was its purpose, cannot be considered by you as any evidence against the other defendants, *i. e.,* it is no evidence that they entered into such an agreement at all." The Court exactly so charged the jury and added: "That is if there is no evidence they entered into such an agreement at all. I charge you that."

The patience of the long experienced Judge had evidently been tried by the form of appellants' requests, some of which were so worded as to enjoin the jury to find a verdict for the defendants should they find a certain isolated state of facts and the Court had to vary or qualify other requested instructions in order to properly submit them. The record evidences that the quoted qualification of this request resulted therefrom.and we do not think that appellants' zealous counsel are justified in construing its effect upon the jury as they do in argument in this Court and as is perhaps warranted by the literal meaning of the words standing alone. It is axiomatic that the Court's charge to the jury must be considered as a whole and when this is done in this case counsel's complaint appears to be hypercritical.

The Court might, and probably should, have been asked for a definite ruling, as invited by him, after the admission of the evidence, that it affected solely, and should be considered by the jury only as to the declarant. But whatever the situation lacked in clarification to the jury must have been supplied by the incident above related in the examination of the witness, the appellant, Ezelle. Furthermore at the end of the charge the Judge asked for suggestions of counsel as to any failure on his part to cover the field and one of the appellants's counsel asked that there be further instruction upon the law of the greater weight of the evidence, which additional charge was made, and afterward the Court again asked, "What else can I charge, Mr. Barron?" But there was no further request, and we think it was clearly incumbent upon counsel under these circumstances, if dissatisfied with the charging of the request or otherwise, to ask other or additional instructions by the Court.

Appellants challenge the correctness of the Court's instructions to the jury as to the measure of damages.

Strong adjectives are used in condemnation of the charge, but we find no merit in the criticisms. We copy below the portions of the charge quoted under this question and attacked in appellants' brief:

"When a man is injured personally, his hand cut off, his foot mashed, something like that, you haven't any standard to go by. It is the same way when a man's business is ruined. You can't come down and say the business was worth so much, because a business has different things of value, the stock of goods, the trade established, the good will of the business. You have various things that come into consideration as to the value of the business, and probably if a man were undertaking to sell, he could state these things to show that it was worth more than physical property. That is a going concern. When you go to estimate actual damages, you have to take these things into consideration to say if his business was ruined by the conspiracy, what was the value of it."

On the subject of punitive damages, the Judge charged the jury in part as follows (note apparent error in transscription) : "The actual damage may be very small but the injury may be done to another in a high-handed or malicious way, the law says this is damage by way of punishment. * * * The jury considers the evidence whether it was justifiable, as the lawful or high-handed or malicious and if so what amount of money should be required to be paid to the plaintiff by those who did the injury in that manner. In considering what the punishment and the extent of punishment is you take into consideration the ability of the person to pay. A fine of $100.00 might be a severe punishment to one person and no punishment to another. So, that in fixing the sum of money by way of punitive damages take into consideration the ability of the one punished to pay punitive damages. That is the reason they were allowed to tell you how much the defendant Texas Company was worth. It was the purpose of telling you that so that in case you undertook to fix punitive damages you would know how much it was worth."

No request for instructions upon the measure of damages was declined by the Judge and this in spite of the twice re-

peated invitation for additional requests, adverted to above. We find no error in the quoted portions of the instructions and in the absence of request for further exposition of the subject we cannot, under the circumstances related, find error. "* * * If there was any further amplification of the charge desired, it was incumbent upon appellant to call it to the court's attention and to file a request therefor." *Sample v. Gulf Refining Co.,* 183 S. C., 399, 191 S. E., 209, 215.

The following is quoted from 11 Am. Jur., 587, Conspiracy, Measure of Damages: "The elements which go to make up such damages must depend upon the nature of the act and injury. Each conspirator is liable for all damages naturally resulting from any wrongful act of a co-conspirator in exercising the joint enterprise. Whether the damages proximately resulted from the wrongful act of the conspirators is ordinarily a question for the jury."

" 'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.' * * * Certainty in the fact of damages is essential. Certainty as to the amount goes no further than to require a basis for a reasoned conclusion." *Palmer v. Connecticut R. & Light Co.,* 311 U. S., 544, 61 S. Ct., 379, 385, 85 L. Ed., 336.

That there was no error in the Judge's charge with respect to punitive damages is shown by the following statement from *Johnson v. Atlantic Coast Line Railroad Company et al.,* 142 S. C., 125, 140 S. E., 443, 447: "On the other hand, in the assessment of punitive damages, there is no exact monetary standard which can be used as a measure, and in assessment of such damages the main things to be considered are the character of the tort committed, the punishment which should be meted out therefor, and the ability of the wrongdoer to pay. The amounts which should be assessed as punitive damages, therefore, are properly left to the discretion of the jury, subject to the right of the trial

Judge to approve or disapprove as has been so often held by this court."

The next question submitted in argument imputes error in portions of the instructions to the jury quoted above as being charges upon the facts in violation of the constitutional inhibition. It is said that the words "when you go to estimate actual damages, you take these things into consideration," etc., and the similar language used by the Judge with respect to punitive damages, implied an assumption on the part of the Court of damages, as did the last portion of the charge, given in response to plaintiff's counsel's verbal request, to the effect that a verdict for the plaintiff must be against at least two of the defendants as the action was founded upon conspiracy.

Again we think that appellants are hypercritical of the Court, The jury had been very clearly instructed at the outset of the charge that the Court had nothing to do with the evidence (facts) which was exclusively for their consideration and determination.

Under this head, appellants similarly complain that the Judge should not have said in connection with his charge upon punitive damages that information had been admitted as to the financial worth of the Texas Company, which charge of error we think is also untenable. In the complaint it was alleged that the appellant company "is a large and powerful corporation of great resources and great wealth," and this was admitted in this appellant's answer. It was a fact in the case and the Court was only properly explaining its relevancy to the jury.

Question No. VII presented by the appellants infers that the effect of the charge to the jury was that the plaintiff was entitled to recover damages upon proof of the alleged conspiracy alone without regard to the alleged overt acts or to the actual suffering of damages by plaintiff; and portions of the instructions are cited as allegedly erroneous on this score. We copy them; it will be noted that

the last six paragraphs were added by the Judge to various requests for instructions made by the appellants, or some of them:

"This is an action for damages for conspiracy to injure the plaintiff, J. H. Charles."

"Mr. Foreman, and Gentlemen, you will notice that these defendants are charged with entering into a conspiracy. Ordinarily a conspiracy is where two or more persons combine or agree to do something to the detriment or hurt of another. If they agree to do an unlawful thing for the detriment or hurt of another or if they agree to do a lawful thing but agree to do it in an unlawful manner that would be a conspiracy. * * * When these persons combine or agree and conspire to do certain things to injure somebody else, if they are unlawful things they agree to do, it is a conspiracy or if the things they agree to do are lawful but they undertake and agree to do it in an unlawful manner that is conspiracy."

"That is correct. There is no law that a person can't cut the price of what he has to sell ordinarily, but it would be unlawful if it were done in conspiracy to injure someone else."

"If they went about this in a legitimate way to forward their business without any intention of hurting any one else that would not be a conspiracy and therefore, if it were not a conspiracy why this cause of action would fail."

"I think that is a fundamental thing that anybody can rely on the law for his remedy but there are wrongs in which there is no legal remedy but as I understand it, there is no question but that the plaintiff is relying on the law."

"If you find they did everything that Charles claimed they did but Charles wasn't hurt, why of course you can't find any damage at all, but I will explain to you more fully later on actual and punitive damages."

"If you find that Charles first lowered his price on the commodity and these people merely met the price, that would

not be a violation of the law. It would not be doing an illegal thing or a legal thing in an unlawful manner but if you find that they did it in a conspiracy to do him harm, that would be illegal."

"Unless these threats injured or helped to injure Charles and were part of the conspiracy, then he would not be entitled to claim any damage because there is no unlawful act in that. If you find there was a conspiracy by them or they were undertaking a way to do a lawful thing in an unlawful manner or in conspiracy to injure him, then it would be a basis for you to consider."

Often error may be found in the abstract consideration of unconnected excerpts from almost any charge to a jury, but in this case even that mistaken method of consideration fails to present the usual suggestions of error; and we are unable to appreciate appellants' view that the Judge expressed the idea that a conspiracy alone is actionable. It is elementary, of course, that resulting damage is the gist of the action and respondent's counsel at the time of the trial and now are in agreement, as was the trial Judge, with appellants in their view that an unexecuted conspiracy does not give rise to a cause of action. We find nothing in the challenged instructions violative of this well known principle.

In appellant's next question they assert that the verdict was not supported by the evidence and was so grossly excessive as to clearly indicate that it was the result of caprice, prejudice or passion. Some time after the trial and when a transcript of the proceedings thereon was available, appellants submitted to the trial Judge and argued elaborate grounds for a new trial and he filed a well considered order refusing such unless the plaintiff failed to remit $15,000.00 of the verdict for punitive damages, which was done as stated above. We quote with approval that portion of the order relating to the immediate question, as follows:

"Out of the numerous and apparently conflicting decisions on the question of the measure of damages in cases involv-

ing damage to or destruction of a business, it is not my view that no recovery may be had because in a given case any amount that may be awarded the plaintiff is not measurable by some precise mathematical formula. While speculation may not furnish a foundation for a .jury award, common sense and business experience combine with fundamental legal concepts to entitle the plaintiff in cases of the present character to recover a sum that takes into account not only the specific items of loss and damage traceable to the acts of the defendants in specific transactions, and the loss and damage inflicted on the plaintiff in the destruction of particular items of his business; he also is entitled to recover some reasonable amount that will compensate him for the loss of profits that he will sustain by reason of the permanent damage done his business, insofar as a determination on this subject can be reached from the evidence.

"In this case the charge is made, with evidence to support it, that the defendants undertook to drive the plaintiff out of the oil business in Union County. There is evidence to support the conclusion evidently reached by the jury that the purpose of the defendants had been accomplished, that is to say, that by reason of the various things charged against the defendants the plaintiff found it impossible to successfully prosecute his business after the dissolution of his partnership with Lynch, and that he had been effectually eliminated from competition with the defendants.

"Admittedly it would be impracticable to determine the precise losses sustained by the plaintiff. There are however sales figures and elements and amounts of profit shown by the testimony from which various calculations can be made.

"For illustration, if the plaintiff's business record shows that but for the acts of the defendants he could have sold twenty thousand gallons of gasoline per month since the dissolution of the partnership, there is ample testimony from which to determine that the profits from the sale of this quantity of gasoline, and of other products which are sold

in the same line of business, would yield many hundreds of dollars per month. Giving the plaintiff a reasonable life expectancy; taking into account the volume of business done by him before the partnership was formed and the business which the plaintiff admittedly played a large part in building up for the partnership; and considering the initial progress made by the plaintiff after the dissolution of the partnership, there is an adequate foundation upon which the jury could have calculated the actual damages sustained by the plaintiff. There are varying methods of calculation, based on such figures, from which it could be concluded that the jury fixed the plaintiff's damages at some given amount per year based on past earnings, for some stated reasonable number of years. At least there is no necessary inference, in the light of the specific data with which the record abounds on the subject of past experience, that the jury reached its figure of actual damages in the amount of $35,000.00 by disregarding the evidence and resorting to speculation, or giving effect to prejudice.

"Reasonable men would differ widely in assessing damages in a case of the present character, but I am unable to conclude that the amount of actual damages awarded in this case exceeds the reasonable compensation to which the plaintiff may be deemed entitled if we adopt the viewpoint of the jury that the plaintiff and his witnesses are to be believed in the statements made by them as to the character and consequences of the acts charged and the financial returns which the plaintiff had obtained from his efforts prior to the existence of the partnership, and which he could have continued to make after the dissolution of the partnership, but for the alleged wrongs suffered by him.

" 'The authorities now generally recognize that profits which have been prevented or lost as the natural consequence of a breach of a contract or the commission of a tortious act may be recovered as an item of damages in an action based upon such breach of contract or tor-

tious act, provided it can be established that the profits claimed to have been ·lost would· reasonably have been realized except for the defendants wrong. In other words; the right to recover profits claimed to have been lost as a result of a tort or breach of a contract is now generally determined by the same rules as govern the recovery of other damages. The views expressed in earlier American and English decisions, excluding profits altogether as an element of recoverable damages in actions for breach of contract and ·for tort, are no longer followed. When profits are spoken of as not recoverable, reference is generally had to the profits of dependent and collateral engagements or those contingent upon future bargains, speculations, or states of the market, and not the difference between the agreed price of something contracted for and its ascertainable value or cost. Profits sometimes are not, in a legal point of view, either remote or uncertain, and in some cases are the best possible measure of damages, for the very reason that the loss is indisputable and the amount can be estimated with almost absolute certainty. It may therefore be said that lost profits are a proper element of damage where such loss is the direct and necessary result of the defendant's acts.' * * *

"  'The law does not require absolute certainty of data upon which lost profits are to be estimated, but all that is required is such reasonable certainty that damages may not be based wholly upon speculation and conjecture, and it is sufficient if there is a certain standard or fixed method by which profits sought to be recovered may be estimated and determined with a fair degree of accuracy. It has been said that the most definite rule that can be drawn from the cases would seem to be that if by any chance or under any condition or affairs then existing the profits might not have accrued though the wrongful act had not intervened, there can be no allowance of profits lost as damages; but if; except for the wrongful act, there must have been profits, notwithstanding any other circumstances existing at the time of perpetration of the wrong, the question of

their speculativeness, and contingency is absolutely negatived. It is usually the right of the innocent party to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it, and then it is for the jury, under proper instructions as to the rules of damages, to determine the compensation to be awarded for the breach.' Amer. Jur., 556, *et seq.*

"See, also 17 C. J., 785; 25 C. J. S., Damages, § 42; *Lester v. Fox Film Corporation,* 114 S. C., 533, 104 S. E., 178; *National Tire & Rubber Company v. Hoover,* 128 S. C., 344, 122 S. E., 858.

"Reviewing the evidence in the light of these well settled principles applicable to this case, I am unable to reach the conclusion that the verdict should be set aside as against the preponderance of the evidence. It is not a question to what extent, in my opinion, the defendants are guilty of the acts charged. It suffices that there is ample evidence to support the verdict of the jury, and I am satisfied that the instructions on the law as given to the jury, when read as a whole, conform to the legal principles above stated.

"From the impressions which I gained of the merits of this case and of the significance that may be attached to various incidents and statements as they came from the lips of the witnesses, I cannot accept the viewpoint of the defendants' counsel that the unusual amount of the verdict bespeaks a disregard by the jury of the merits of the case, or a conclusion reached by them on the basis of prejudice or passion, rather than in the light of the principles of law which they were directed to follow.

"On the question of punitive damages, it is not claimed by the defendants' counsel that any undue or improper attempt was made to inflame the feelings of the jury against the defendants. The jury had before it a definite conception of the immense wealth of the Texas Company, and of the important executive position with that concern held by the

defendant, Ezelle, and undoubtedly took into consideration that punitive damages would serve no legal purpose unless they were awarded in an amount commensurate with the financial position of the defendant against whom they were awarded. At least, nothing that occurred during the trial warrants the view, in my opinion, that the amount of the damages awarded violates any legal principle, or that it goes beyond the factors which were before the jury.

"But in view of the fact that the compensatory damages are adequate and substantial in amount, I think that the punitive damages might be properly reduced by Fifteen Thousand ($15,000.00) Dollars, so that the total verdict would amount to Sixty Thousand ($60,000.00) Dollars. That sum, in my opinion, is not excessive in any aspect of the case."

To the authorities cited may be added other decisions of this Court, particularly *Duncan v. Record Publishing Company*, 145 S. C., 196, 143 S. E., 31, where a verdict for $50,-000.00 damages for libel was sustained, and *Weeks v. Carolina Power and Light Company*, 156 S. C., 158, 153 S. E., 119, 124, where it was stated by the Court "We have said repeatedly that we have little, if anything, to do with the amounts of verdicts. The proper amounts to be rendered, as either actual or punitive damages, are left, under our law, almost entirely to the trial jury and the trial judge;" and *Payne v. Cohen, et al.*, 168 S. C., 459, 167 S. E., 665, 667, where the Court said: "We hold it to be the settled rule of law in this jurisdiction that the granting of a new trial on the ground that the verdict is so excessive as to show caprice or prejudice is in the discretion of the trial judge, and, unless abuse of that discretion is shown, the order refusing the motion for new trial on that ground will not be disturbed." *Veronee v. Charleston Consol. Ry. & Lighting Co.*, 152 S. C., 178, 149 S. E., 753.

The appellant Ezelle next asserts as a part of the argument of himself and the Texas Company that the verdict for punitive damages against him cannot

stand for lack of evidence of his financial worth. The only evidence which we find in the record touching this defendant's financial condition is that he was "zone manager or representative for the Texas Corporation with extensive territory; but he cites no authority, and we know of none, that requires evidence of a defendant's financial worth to warrant a finding of punitive damages if there is other required evidence upon which to base such a finding. All the authorities are to the effect that the financial ability of a defendant is a fact for consideration of the jury but, as stated, none of which we know make it a requisite. There may well be cases, this one of them, where sources of evidence of a defendant's worth are not available to the plaintiff. Such information is peculiarly within the possession of the defendant and in this instance, although he testified, he furnished none, and we do not think that under these circumstances he should be heard to complain of its absence or paucity.

It may be strongly argued, as by respondent, that the omission of evidence of the worth of the co-defendants of the Texas Company militates for the benefit of all for unquestionably their liability is joint and several and in this case proof of large financial means of Ezelle and Lynch would have been calculated to enhance the verdict. The purposes of the allowance of punitive damages are well known, to punish the wrongdoer and to discourage the repetition of the tort by him or another, hence the synonymous term "exemplary."

"Such damages may also be awarded where the gist of the action is the injury resulting from malicious acts and the amount is within wide limits discretionary with the jury." 12 C. J., 647, 15 C. J. S., Conspiracy, § 33; *Rhodes v. Granby Cotton Mills,* 87 S. C., 18, 68 S. E., 824. The latter portion of the above quotation from the order of the Circuit Judge disposing of appellants' motion for a new trial is pertinent here.

The foregoing observations upon this ground of the appeal are similarly applicable to the appellant Lynch, but he

has not pressed in argument in his behalf the point thus made by Ezelle:

Appellants' ground of appeal Numbered X submits as error alleged instances of the restriction by the trial Judge of appellants' cross examination of the plaintiff. The first such alleged instance was when the Judge admonished counsel against controversy with the witness and politely told him to reserve his argument for the jury. The other cited instance was about the same. We have carefully examined the record of these exchanges between counsel, witness and Court and find no abuse of the discretion of the latter. It was the Court's responsibility and duty to see that the questioning proceeded in an orderly manner without suppression of proper examination, which result seems to us to have been achieved in this case without prejudicial infringement of the right of cross examination.

The eleventh and last question for consideration submitted in the brief of the Texas Company and Ezelle relates to the admission in evidence over their objection of the testimony of the chemist who analyzed and testified to the contents of three jars of gasoline, which he found to contain an admixture of kerosene in varying amounts. Other testimony tended to show that this impure gasoline had been sold by the former partnership of Charles and Lynch during the period between the execution of their agreement of dissolution and the effective date of it. Plaintiff testified as to his acquisition of the samples and preservation by him for a month or so until delivery to one of his counsel, who was also his kinsman, who stored them in the home of a relative under circumstances detailed to the jury and it was for them to determine the weight to be given the questioned testimony. The chemist testified that there would be little or no change in the contents of the jars in view of the seals of rubber so we think it was proper to permit him to testify as to his analysis despite the storage of approximately two years.

The decision relied upon by appellants in this connection, *Housand v. Armour & Company,* 173 S. C., 268, 175 S. E., 516, is not controlling for there it was held that testimony of the result of an analysis of sausage made after six months storage in a refrigerator should have been excluded on two grounds, first because of the testimony that chemical changes and reactions in the sausage were likely to have occurred in this time and second that the witness was shown upon examination not to be an expert upon the subject and his testimony thereabout was hearsay. Neither of these grounds is present here. *Hollis v. Armour & Co.,* 190 S. C., 170, 2 S. E. (2d), 681, also cited by appellants, is inapplicable.

In this instance there is no question of the qualification of the witness, Dr. G. F. Lipscomb, head of the Department of Chemistry of the State University and twenty years a teacher of that subject there, with prior experience at Clemson College and Princeton University. His testimony was to the effect that if the containers were tightly sealed there would be no change in the contents in two years, and he found them tight. We think that the Judge correctly ruled that the testimony was competent and admissible and its value was for the jury who heard all of the evidence as to the acquisition and preservation of the gasoline during the long period which elapsed before analysis.

The appellant Lynch has also filed two briefs, in chief and reply, in which he states the question thus separately argued to relate to the weight, as evidence of conspiracy, of the conversation testified to by plaintiff between him and this appellant, wherein the latter allegedly admitted the formation and purpose of the conspiracy. We have considered these arguments but what has been said with reference to the contentions of the other appellants dispose of those of Lynch. His argument is strong, but going to the weight of the testimony and its probabilities of truth, should have been, and we have no doubt ably was, directed to the jury.

Lynch did not take the stand to deny the existence of the conspiracy, the overt acts complained of and testified to, or

the subsequent admission charged against him. At the conclusion of the testimony offered for the defendants his counsel, who was also one of the counsel for the other defendants, instead stated to the Court: "If your Honor please, Mr. Lynch has a case against the Texas Company and under the circumstances he does not care to go on the stand."

In full realization of the importance of the case to the plaintiff and to the defendants, the respondent and the appellants, respectively, we have given it unstinted study and attention, in which we have been aided by the learned briefs of counsel, and are satisfied that we have reached the correct conclusion; we have found no errors of law and under the Constitution we are concerned only with such in this case.

In our consideration we have had before us the decision in the prior appeal, *Charles v. Texas Company et al.,* 192 S. C., 82, 5 S. E. (2d), 464, 471, in which some of the governing principles were enunciated. From that decision we quote:

"There is no question that when one has a right to do a certain thing that a threat to do this legal act cannot constitute duress, but in this case the allegations of the complaint are that various factors enter into the dissolution of the partnership, which was a part of the conspiracy to injure and damage the plaintiff and plaintiff has a right to prove all of the relevant matters in connection with the cause of action alleged. * * *

"Exception III complains of error in the failure of the Circuit Judge to require the plaintiff to strike out of his complaint the allegation that Ezelle and Lynch approached all of the service stations formerly supplied with products by the partnership and offered to sell kerosene and motor oils at prices substantially below the regular prices prevailing. The defendants may have had a right to sell to anyone their products at such prices as they saw fit, but if this was done in furtherance of a conspiracy to injure and damage the plaintiff the allegation would be pertinent and relevant on that issue. * * *

"Even an act that is lawful can be done in an unlawful fashion and a definition of conspiracy has been given as the conspiring together to do an unlawful act to the detriment of another or the doing of a lawful act in an unlawful way to the detriment of another."

All questions argued by the appellants have been determined against them.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. DEWEY OXNER concur.