1542

SOUTH CAROLINA FEDERAL SAVINGS BANK, Plaintiff v. THORN-TON-CROSBY DEVELOPMENT COMPANY, INC., T.R. Tucker Construction Co., Inc., and Hartford Accident and Indemnity Company, Inc., Defendants, of whom Thornton-Crosby Development Company, Inc., is Respondent, and T.R. Tucker Construction Co., Inc., and Hartford Accident and Indemnity Company, Inc., are Appellants. Appeal of T.R. TUCKER CONSTRUCTION CO., INC., and Hartford Accident and Indemnity Company, Inc.,

(399 S.E. (2d) 8)

Court of Appeals

*Joseph F. Singleton* of *Cross, Singleton, Burroughs & Norton,* Conway, *James B. Richardson, Jr.* of *Richardson and*

*Smith,* Columbia, *O. William Faison* and *Timothy C. Barber* of *Faison & Brown,* Durham, N.C., *for appellants.*

*Edward M. Woodward, Jr.* of *Woodward, Leventis, Unger, Ormond & Herndon,* Columbia and *J. Jackson Thomas* of *Stevens, Stevens & Thomas,* Myrtle Beach, *for respondent.*

Heard Feb. 20, 1990.

Decided Sept. 17, 1990.

BELL, Judge:

This is an action for damages for breach of contract. South Carolina Federal Savings Bank sued to foreclose a construction loan mortgage on a condominium project, naming as defendants, among others, the owner and developer, Thornton-Crosby Development Company, Inc.; the prime contractor, T.R. Tucker Construction Company, Inc.; and the surety on the prime contractor's performance bond, Hartford Accident and Indemnity Company, Inc. Thornton-Crosby crossclaimed against Tucker and Hartford for breach of the construction contract. Tucker and Hartford denied the crossclaim and counterclaimed against Thornton-Crosby, alleging it breached the contract. The court severed the Bank's foreclosure action and tried it separately. The Bank prevailed, resulting in a deficiency judgment against Thornton-Crosby, Tucker ( who had co-signed the construction loan), and three other defendants. The contract claims were then referred to the master for entry of judgment and direct appeal. After trial, the master entered judgment for Thornton-Crosby on all claims and awarded damages. Tucker and Hartford no longer contest liability, but appeal solely on the issue of damages. We affirm.

Viewed in the light most favorable to Thornton-Crosby, the facts of the case are as follows.

On May 18, 1984, Tucker contracted with Thornton-Crosby to build an eighteen unit condominium building on the beach at Garden City, South Carolina. The contract called for completion of the project in December, 1984. By August, 1985, construction was still not complete. At that point, Tucker signed an option to purchase the project from Thornton-Crosby and also cosigned the construction loan to induce the

Bank to extend the loan period. In November, 1985, Tucker abandoned the project without completing construction or exercising the option to purchase. Much of Tucker's work was substandard. Thornton-Crosby was financially unable to complete the project, so the Bank foreclosed.

The master found that Tucker's breach caused the project to fail. He also found that, had Tucker performed the contract, Thornton-Crosby would have received sufficient money from the sale of condominiums to repay all indebtedness on the project and to realize a profit. In addition to general damages (which are not at issue on appeal), he, therefore, awarded the following as special damages for the breach:

| | |
|---|---|
| Lost profits | $382,600.00 |
| Shareholders' loan to developer | 250,000.00 |
| Deficiency judgment | 394,742.80 |

## I.

The legal principles governing this case are straightforward. In a breach of contract action, damages serve to place the nonbreaching party in the position he would have enjoyed had the contract been performed. *Carolina Winds Owners' Association, Inc. v. Joe Harden Builder, Inc.*, 297 S.C. 74, 374 S.E. (2d) 897 (Ct. App. 1988), *questioned in dictum on other grounds, Kennedy v. Columbia Lumber Co.*, 299 S.C. 335, 384 S.E. (2d) 730 (1989). That is, damages give him the benefit of his bargain. *Id.* In the normal case, the damage will consist of two distinct elements: (1) out-of-pocket costs actually incurred as a result of the contract; and (2) the gain above costs that would have been realized had the contract been performed. In this case, the master awarded both elements of damage.

When a plaintiff seeks special damages for breach of contract, he must plead and prove both the fact of damage and the amount of damage with a reasonable degree of certainty. *Jackson v. Midlands Human Resources Center*, 296 S.C. 526, 374 S.E. (2d) 505 (Ct. App. 1988). The fact of damage is proved by showing (1) that the plaintiff realized an actual loss he would not have incurred but for the defendant's breach of contract; and (2) the loss was a natural consequence of the breach which may reasonably be supposed

to have been within the contemplation of the parties at the time the contract was made. *Charles v. Texas Company,* 199 S.C. 156, 18 S.E. (2d) 719 (1942); *Goodwin v. Hilton Head Company,* 273 S.C. 758, 259 S.E. (2d) 611 (1979); *The Drews Company, Inc. v. Ledwith-Wolfe Associates, Inc.,* 296 S.C. 207, 371 S.E. (2d) 532 (1988).

If the fact of damage is established, the law does not require the amount of damage to be proved with absolute mathematical certainty; damages may be recovered if there is evidence upon which a reasonable assessment of the loss can be made. *Charles v. Texas Company,* 199 S.C. at 180, 18 S.E. (2d) at 729; *South Carolina Finance Corporation of Anderson v. West Side Finance Company,* 236 S.C. 109, 113 S.E. (2d) 329 (1960). The estimation of damages, however, cannot be based on conjecture or speculation; it must pass the realm of opinion not founded on facts and must rest on evidence from which a reasonably accurate conclusion regarding the amount of loss can be logically and rationally drawn. *The Drews Company, Inc. v. Ledwith-Wolfe Associates, Inc.,* 296 S.C. at 214, 371 S.E. (2d) at 536. There must be a certain standard or fixed method by which the loss may be estimated with a fair degree of accuracy. *Charles v. Texas Company,* 199 S.C. at 180, 18 S.E. (2d) at 729.

## II.

Tucker and Hartford challenge the award of lost profits on three grounds. First, they argue the amount Thornton-Crosby would have realized from condominium sales is entirely speculative. Second, they argue the units would not have sold, even if the project had been completed (*i.e.,* Thornton-Crosby failed to prove that the breach rather than other factors caused the project to fail). Third, they argue it was not foreseeable that Thornton-Crosby would lose profits if Tucker breached the contract. Each argument is essentially an attack on the sufficiency of the evidence to prove special damages.

On appeal from a final judgment entered by the master in a law case tried without a jury, we may not consider the case based on our own view of the preponderance of the evidence, but must view the record so as to support the master's findings of fact whenever reasonably possible. *Sheek*

*v. Crimestoppers Alarm Systems,* 297 S.C. 375, 377 S.E. (2d) 132 (Ct. App. 1989). In other words, we must consider the evidence in the light most favorable to the respondent, eliminating from consideration evidence to the contrary. *Id.* Under this standard of review, the master's findings of fact will not be disturbed if there is any evidence which reasonably supports them. *Id.*

■ The project consisted of eighteen condominium units with an expected total sales price of $2,320,000.00. The evidence showed that by September 5, 1984, before construction began, nine units had "presold" for a total price of $1,160,200.00. Henry Beckham, an expert witness for Tucker, testified that, under then existing market conditions, the absorption (sales) rate for the project at the expected sales price would have been three units per month at least through early 1985 and possibly into late 1985. He valued the project at $2,350,000.00, somewhat higher than Thornton-Crosby's projected sales. Thus, had Tucker completed the project in December, 1984, as contracted, Thornton-Crosby would have sold out the project by March, 1985.

The master, relying on this evidence, found that Thornton-Crosby would have sold out by June or July, 1985, at a net profit of $382,600.00 His finding, which is reasonably supported by the evidence, disposes of the arguments that lost profits are speculative or that they were not caused by Tucker's breach.

■ The argument that loss of profits was unforeseeable is equally without merit. At the time the parties entered the contract, Tucker knew Thornton-Crosby was building the project in order to resell individual condominium units. Indeed, Tucker emphasizes that Thornton-Crosby spent three months "haggling" over the price of the job in an effort to maximize its profit. Tucker's own testimony further shows that it was aware the project was to be financed with a construction loan, that sales would be used to pay off the loan, and that failure to complete construction would result in a default on the loan and loss of the project. In view of this evidence, it was not only foreseeable, but also foreseen, that Tucker's breach would result in lost profits to Thornton-Crosby.

## III.

The master found as a fact, and the evidence shows, that shareholders loaned Thornton-Crosby $250,000.00 to help finance the project. No exception is taken to this finding, although Tucker complains there is no record of precisely how the money was spent. Instead, Tucker and Hartford argue the amount of the loan is not a recoverable item of damage (1) because inability to repay it was not a direct and necessary result of the contractor's breach; and (2) because it was not within the reasonable contemplation of the parties when the contract was made that the contractor's breach would result in a loss of this investment.

As we noted above, the master found that, had Tucker performed the contract, Thornton-Crosby would have received sufficient money from the sale of condominiums to repay all indebtedness on the project. This finding disposes of the argument that Thornton-Crosby's inability to repay its debt to the shareholders did not result from Tucker's abandonment of the project. Likewise, as we have already said, Tucker knew at the time of contracting that Thornton-Crosby planned to pay its indebtedness on the project by selling out the units to individual purchasers. Thus, it was within the contemplation of the parties that a failure by Tucker to complete the project would result in an out of pocket loss due to Thornton-Crosby's inability to repay loans on the project.

## IV.

Tucker's final argument is that the foreclosure and entry of a deficiency judgment against Thornton-Crosby was not a direct and necessary result of its breach of contract. This argument is precluded by the master's finding that Tucker's breach did cause Thornton-Crosby to suffer a deficiency judgment for the balance of the unpaid Bank loan on the project.

Tucker also argues that the deficiency judgment is not a proper element of damages. Although we find no South Carolina case directly on point, it is well recognized that damages for a deficiency judgment rendered against the debtor in an action to foreclose a mortgage on the premises is a recoverable element of special damages. *See, e.g., West Haven Sound Development Corporation v. City of West Haven*, 207 Conn. 308, 541 A. (2d) 858 (1988); *St. Paul at*

*Chase Corporation v. Manufacturers Life Insurance Company*, 262 Md. 192, 278 A. (2d) 12, *cert. denied*, 404 U.S. 857, 92 S. Ct. 104, 30 L. Ed. (2d) 98 (1971). As the court observed in *St. Paul*, to place the nonbreaching party in the position he would have enjoyed if the contract had been performed, it is necessary to require the breaching party "to pay to Plaintiff such sum as will enable it to liquidate its obligation under the deficiency decree." *Id.* at 250, 278 A. (2d) at 40.

Finally, Tucker contends it may have to pay the deficiency judgment twice, while Thornton-Crosby pays nothing at all.

The argument is based on speculation and a mistaken legal conclusion. First, it assumes Thornton-Crosby will not pay the deficiency judgment from the damages awarded in this suit. There is no evidence to support this assertion. Furthermore, Tucker overlooks a critical point: by seeking the full amount of the deficiency as contractual damages, Thornton-Crosby has necessarily bound itself to pay the entire deficiency. Second, Tucker assumes that if Thornton-Crosby does not pay the judgment, the Savings Bank will attempt to collect the debt solely from Tucker. This assumption is also based on speculation. Moreover, if the Savings Bank were to institute an action against Tucker alone, Tucker would have recourse to avoid paying the amount of the deficiency twice.

Accordingly, for the reasons stated, we affirm the judgment of the master.

Affirmed.

GARDNER and CURETON, JJ., concur.