PER CURIAM:

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Money First Financial Services, Inc., Respondent,
v.
W.E. Montgomery; Lois Montgomery; Luther Enzor; Eunice W.
Enzor; Data Search, Inc.; Stewart Title Guaranty Company; Conseco Finance Servicing Corp., Successor to Green Tree Financial Servicing Corporation, and BB&T, Defendants,
Of whom Data Search, Inc., is the, Appellant.
 
 
 

Appeal From Horry County
J. Stanton Cross, Jr., Master in Equity

Unpublished Opinion No. 2005-UP-291
Heard March 9, 2005  Filed April 21, 2005

AFFIRMED

 
 
 
Mark Andrew Brunty, of Myrtle Beach, and Michael J. Jack, of Baltimore, for Appellant.
Joseph F. Singleton, of Conway, for Respondent.
 
 
 

PER CURIAM:    Data Search, Inc. appeals the master in equitys order finding it liable for damages to Money First Financial Services for providing incorrect title information related to a mortgage loan closing.  We affirm.
FACTS
In March 2000, W.E. and Lois Montgomery sought to refinance their existing mortgage with Money First.  Money First contracted with Data Search to perform a title search of the Montgomerys property and assist in the loan closing.  Money First chose Data Search due to the previous work it had done as an agent for Stewart Title Guaranty Company in connection with the Montgomerys existing mortgage that was closed in 1999.  Money First retained Stewart Title to issue a title insurance policy.  
Data Search in turn employed a title abstractor to research the title and, following the closing, record the mortgage.  This was the same abstractor who examined the title and issued a report on the 1999 mortgage.  In 1999 and 2000, the abstractors report noted the Montgomerys only had a life estate in their land.  
In updating her 1999 report for the 2000 loan, the abstractor informed Data Search they had incorrectly reported the Montgomerys owned the property in fee simple.  A Data Search representative informed the abstractor that Data Searchs records indicated the Montgomerys owned the property as tenants in common, and the representative instructed the abstractor to record the mortgage.  
Prior to closing, Stewart Title issued a title commitment through Data Search, its agent, which stated the Montgomerys owned the subject property in fee simple.  Data Search served as closing agent for the loan and issued a first lien title clearance letter that failed to inform Money First of the true state of the Montgomerys ownership interest.  Both the title commitment and final title policy issued by Data Search stated the Montgomerys held a fee simple interest in the property.  Money First loaned a substantial sum in reliance on Data Searchs assertions regarding the extent of the Montgomerys ownership of the property.  
After closing, Money First assigned its mortgage to Key Bank.  The Montgomerys subsequently defaulted on the loan.  Key Bank began foreclosure proceedings and, as a result, learned the true status of the Montgomerys title.  Due to the error, Money First was obligated to repurchase the mortgage from Key Bank.  
Money First commenced a foreclosure action on the mortgage and sought damages against Data Search and Stewart Title for breach of contract as well as negligence.  The master bifurcated the matter and issued an order of foreclosure that resulted in a public sale, at which the highest bid was $4,001.  Money First received a deficiency judgment of $133,112.54.  
The master found the value of the mobile home and property would be $23,000 had the title been as reported by Data Search.  The master further found the value of the mobile home and property with the title as it actually existed to be $4,000.  The master ordered Stewart Title to pay Money First damages in the amount of the value of the property as reported, less the actual value of the land, or $19,000.  
The master further found Data Search breached its contract and was negligent in failing to disclose the true status of the Montgomerys title, reasoning that Money First relied on Data Searchs misrepresentations and as a result incurred damages of $133,112.54.  The master ordered Data Search to pay that amount as the foreseeable damages resulting from its misrepresentations.  Data Search appeals.
STANDARD OF REVIEW
A case asserting breach of contract and seeking money damages is an action at law.  Roberts v. Gaskins, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct. App. 1997).  An appellate court will not disturb the findings of fact of a judge, sitting without a jury in an action at law, unless those findings are without evidentiary support.  Gordon v. Colonial Ins. Co. of California, 342 S.C. 152, 155, 536 S.E.2d 376, 378 (Ct. App. 2000).[1]
LAW/ANALYSIS
Data Search asserts the master in equity failed to apply the proper measure of damages and thus erred in ordering it to pay damages of $133,112.54.  Data Search argues the correct measure of damages is the difference between the fair market value of the property without the title defect and the fair market value of the property with title as it actually existed.  We disagree.
In a breach of contract action, damages serve to place the nonbreaching party in the position he would have enjoyed had the contract been performed.  South Carolina Fed. Sav. Bank v. Thornton-Crosby Dev. Co., 303 S.C. 74, 77, 399 S.E.2d 8, 10-11 (Ct. App. 1990).  Normally damages consist of two distinct elements:  (1) out-of-pocket costs actually incurred as a result of the contract; and (2) the gain above costs that would have been realized had the contract been performed.  Id. at 11, 399 S.E.2d at 77.
A party proves damages by showing an actual loss that would not have been incurred but for the defendants breach of the contract.  Drews Co. v. Ledwith-Wolfe Assocs., 296 S.C. 207, 213, 371 S.E.2d 532, 535 (1988).  In addition, a plaintiff must demonstrate any loss was a natural and foreseeable consequence of the breach that had been reasonably contemplated by the parties at the time the contract was made.  Id.
Money First contracted with Data Search to determine the extent of the Montgomerys interest in the property.  Data Search further agreed to act as the closing agent.  In that capacity, Data Search was instructed to close the transaction only if the Montgomerys could grant Money First a first mortgage security lien on the property, and on the condition that a policy of title insurance was issued in keeping with the loan commitment.  
Data Search breached its contractual obligations at numerous points.  It erroneously reported the state of the title in the initial title commitment and in the first lien title clearance letter completed after closing.  Data Search directed its agent to record the mortgage even after the title examiner advised the company that the Montgomerys only possessed a life estate interest in the land.
Data Searchs principal breach was in failing to notify Money First of the true nature of the title.  Data Searchs actions were to its own benefit, but to Money Firsts detriment.  The record demonstrates Money First would neither have funded the mortgage initially nor been required to repurchase it had Data Search not breached its contractual obligations.  
Money First demonstrated it was foreseeable it would incur the damages awarded by relying on Data Searchs intentional misrepresentations.  Simply put, Money First would not have incurred $133,112.54 in damages but for Data Searchs breach.  Accordingly, the master in equity correctly ordered an amount of damages that placed Money First in the same position it was in before the transaction occurred.  
AFFIRMED.
 GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1] There is some confusion in the record as to whether this was an action based on negligence or contract.  For purposes of this appeal, it makes no difference, for the measure of damages would be the same in either case.