## SITTON v. MACDONALD.

1.  In action for damages for failing to repair a cotton-tie punch, the loss
of stock on hand rendered valueless by the detention of the punch, may
be considered as a measure of damages, but not the profits which might
have been realized from the use of the punch, unless the peculiar cir-
cumstances were known to the defendant, and his contract to repair
was made with reference thereto.
2.  The difference between the profits realized and the profits which might
have been realized, is not recoverable as damages.   The rule making
the difference in price at two different dates the measure of damages
in certain cases, does not apply to a case where there is a mere differ-
ence in profits, where profits are excluded as too remote to be recovered
as damages.

Before COTHRAN, J., Greenville, July, 1885.

This was an action by J. W. Sitton against R. M. Macdonald, commenced September 24, 1884. The opinion states the case.

*Messrs. Nix, Shuman & Nix*, for appellants.

*Mr. A. C. Welborn*, contra.

April 27, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action for damages under the following circumstances : The plaintiff made a business of buying old cotton-ties and manufacturing them into new ties. He alleged that in this business he had occasion to use a peculiar "punch," worth some ten dollars, which could neither be made nor repaired by an ordinary blacksmith ; that this punch getting out of repair, he, in July, 1882, engaged the defendant, who is the proprietor of the "Greenville Machine Works and Iron Foundry," to repair it, which he undertook to do, and return it on a given day ; that on the day named he called for it, but it had not been repaired ; that this occurred several times until the season of 1882 was lost, for which he claimed damages $350. That the defendant promised to have the punch repaired by July, 1883, but the same disappointments followed, until he lost the season of 1883, for which he claimed damages, $450. The same was repeated until he had lost half the season of 1884, when he purchased another punch, and sued the defendant for damages, $1,000. The defendant put in a general denial and special defence "that the cotton-tie punch was broken and useless when left at the shop of defendant."

Upon the trial, the plaintiff offered to prove "as damages the amount of profits he would have earned in the ordinary employment of the punch during the time it was detained by the defendant, viz. : during the seasons of 1882, 1883, and half of 1884. Defendant objected on the ground that such damages were too speculative, remote, and contingent. Objection sustained." The presiding judge then turned to the plaintiff, who was on the stand, and said, "If you can show that you laid in a stock of ties, &c. ; if you can prove that you had made contracts to repair ties for others, or to furnish ties when repaired, &c. ; if you can prove

that hands were employed by the plaintiff, &c., he would be entitled to be re-imbursed their wages actually paid." The plaintiff, in accordance with this announcement, testified that "he had laid in about nine ($9.00) dollars worth of old ties to manufacture in 1882, from which he would have realized one hundred dollars profit if defendant had repaired his punch according to his promises. He kept this stock on hand until he got his new punch in 1884, after the commencement of this action, when he manufactured it into new ties, realizing from said nine dollars' worth of stock twenty-seven dollars profit." The judge charged the jury that if they believed this testimony, they should find for the plaintiff the difference between the profits he would have made out of the stock of 1882 and the profits he did make out of said stock in 1884; and that it was a question of fact for them to determine whether plaintiff, by his negligence, contributed to the loss thus sustained.

The jury found for the plaintiff $42. The defendant made a motion for a new trial, and that being refused, he appeals to this court upon the ground "that his honor erred in ruling that plaintiff could offer evidence, and the jury find as damages the difference between the profits made on material manufactured during the fall of 1884, which the plaintiff had on hand in July, 1882, with a view to manufacturing and selling it in that year, but which he did not manufacture and sell in consequence of the alleged breach of contract, and the profits which the plaintiff would have made if he had manufactured and sold such material during the fall of 1882," &c.

We do not understand that this was an action on the case for vindictive damages, for intentional misrepresentation, deceit, or fraud, but simply an action for damages for the breach of a contract. The rule as to the proper measure of damages is not always free from difficulty. It is not the same under all circumstances, but necessarily varies to meet the varying cases as they arise. It is different in actions *ex contractu* from those *in tort*. In the former it is more restricted, the fundamental principle being that the damage must be "the primary and immediate result of the breach of contract." *Wood's Mayne Dam.*, § 12; *Tappan & Noble* v. *Harwood,* 2 *Speer,* 536; *D'Orval* v. *Hunt, Dudley,*

180.   In this latter well-considered case it was held that "for the breach of an executory contract, without fraud or imposition, the jury can only give such damages as fairly and naturally result from it, and which can be measured by a pecuniary standard ; remote and consequential damages cannot be allowed."

This is undoubtedly the rule, but it is not always easy to fix the exact limit between what is primary and secondary, or what is immediate or consequential and remote.   If the breach is merely in the tardy delivery of property intended for sale, it is obvious enough that ordinarily the damage would be the difference in the price realized from that which might have been obtained at the proper time.   But if the breach is in the non-delivery of an article not intended for sale, but for use in some particular business, other considerations intervene, and the matter is not so clear.   In this class of cases the courts have endeavored to lay down certain rules to assist in fixing the damages upon proper principles.   In *Hadley* v. *Baxendale* (9 *Exch.*, 341), which seems to have been considered a leading case both in England and America, the following rules are indicated : "First, that damages which may fairly and reasonably be considered as naturally arising from a breach of contract, according to the usual course of things, are always recoverable.   Second, that damages which would not arise in the usual course of things from a breach of contract, but which do arise from circumstances peculiar to the special case, are not recoverable, unless the special circumstances are known to the person who has broken the contract."   See *Wood Mayne Dam.*, § 14, and notes.

Now, apply these rules to this case.   It is not perfectly clear, but possibly the loss of the stock on hand (nine dollars' worth) rendered valueless for the time by the detention of the punch, might be reasonably considered as naturally arising from a breach of the contract to repair the punch within a certain time.   But, surely, the very remarkable profits which in the opinion of the plaintiff might have been realized from the use of the punch, could not be so considered.   It certainly was not "in the usual course of things, but peculiar to the special case," that damages to the extent of hundreds of dollars, should result from delay in repairing a punch entirely out of order, and never worth more than ten dollars ;

and if so, according to the second rule above stated, such damages could not be recovered against him, unless these peculiar circumstances were known to the defendant and his contract to repair was made with reference to them, which was not made to appear. In this view, the first ruling of the judge was correct that such possible profits "were too speculative, remote, and contingent."

But subsequent to this general ruling, the plaintiff (who was on the stand) stated that he had on hand stock to the value of $9, and after he got a new punch in 1884, he worked up that old stock at a profit of $27 ; whereas, if he could have used it in 1882, his profit would have been $100, and the judge then charged that the jury might give the difference as damages.   Was this error ? We are not able to see how this difference (although arising out of the old stock) ceased on that account to be profits.   As it seems to us it was still speculative profits, and as such not recoverable as damages.   We are aware that there are circumstances under which one who, by a breach of contract, has delayed a sale until there is a fall in the marketable value of the property, may be charged as damages with the difference in price; but we do not see that such principle applies to a case where the only question is as to more or less profits, which as a whole, as profits, are excluded as too contingent, remote, and speculative.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the case be remanded for a new trial.