14334

WALKER *ET AL.* v. OSWALD *ET AL.*

(186 S. E., 916)

Before FEATHERSTONE, J., Allendale, November, 1935.

*Messrs. DuBose Boylston* and *Thos. M. Boulware,* for appellants,

*Messrs. Randolph Murdaugh, J. E. Tobin* and *Searson &
Searson,* for respondents,

July 15, 1936.

The opinion of the Court was delivered by MR. JUSTICE
BAKER.

The original action in the case at bar was commenced in
the Court of Common Pleas for Allendale County on March
12, 1928, by J. J. Walker, plaintiff-appellant, against Whit-
marsh Dunbar and E. H. Oswald; the latter having died just
a short time subsequent to the termination of the action. The
purpose of said action was to procure an injunction restrain-
ing the cutting of the timber on a certain tract of land sit-
uated in Allendale County, which timber had been sold by the
Oswalds to Whitmarsh Dunbar. The original action finally
terminated in March, 1931, in judgment for the defendants,
and, due to the death of E. H. Oswald, his personal repre-
sentatives were substituted as parties defendants.

On March 12, 1928, the date of the commencement of this
litigation, a temporary injunction was issued pending the
result of a rule to show cause why E. H. Oswald and the re-
spondent Whitmarsh Dunbar should not be enjoined from
cutting the timber on said tract of land until the trial of the
action. The temporary injunction order required of the plain-
tiff-appellant, J. J. Walker, a bond in the penal sum of
$1,000.00 conditioned upon the payment of any damages E.
H. Oswald and Whitmarsh Dunbar might suffer if the plain-
tiff-appellant failed to succeed in his action. Bond was duly
executed in the sum above stated by J. J. Walker, plaintiff-
appellant, as principal, and J. H. Warren, surety-appellant,
as surety.

On March 20, 1928, upon motion of E. H. Oswald and
the respondent Whitmarsh Dunbar, this temporary restrain-

ing order was dissolved by an order of Judge J. Henry Johnson, which order provided that the plaintiff-appellant might subsequently apply for a temporary injunction upon additional or further facts, which of themselves alone or in connection with the pleadings or showing previously made might entitle him to injunctive relief *pendente lite.*

On March 31, 1928, the plaintiff-appellant applied for another restraining order, which was granted on condition that plaintiff-appellant enter into a bond similar in all respects to the bond hereinbefore mentioned. Said bond was executed by the plaintiff-appellant as principal, and T. B. Warren, surety-appellant, as surety.

On April 28, 1928, the original action came on for trial upon its merits, and, after a verdict adverse to the plaintiff-appellant, the temporary restraining order was dissolved and the complaint dismissed. Thereafter, and in due time, the plaintiff-appellant appealed to this Court from the verdict rendered on trial of the action. On July 5, 1928, plaintiff-appellant applied to Mr. Justice Carter and procured a rule to show cause why E. H. Oswald and Whitmarsh Dunbar should not be restrained from cutting the timber on said tract of land until the decision of this Court, and in the meantime restrained the cutting of said timber until the return date of said rule, on the second Monday in October, 1928. The order of Justice Carter required of the plaintiff-appellant a bond similar in all respects to the two bonds hereinbefore mentioned. This bond was executed by plaintiff-appellant as principal, and J. H. Warren, surety-appellant, as surety. No return was made to this rule and no further order rendered thereon. After due consideration of the case on appeal, this Court reversed the judgment of the lower Court and remanded it for a new trial. The case came on for trial for the second time before Judge E. C. Dennis in March, 1931, and again resulted in a verdict for E. H. Oswald and Whitmarsh Dunbar, defendants in the original action.

Notice of intention to appeal to this Court was in due time given, but the appeal was never perfected.

On October 5, 1933, upon motion of respondents, Judge S. W. G. Shipp referred the matter to Hon. I. A. Smoak as Special Referee, to take the testimony and ascertain the amount of damages, if any, suffered by the obligee or obligees in said bonds and to report his findings of fact and conclusions of law, with leave to report any special matter.

Pursuant to the order of Judge Shipp, a reference was held by said referee, who filed his report recommending that damages be assessed as follows:

### Damage to Oswalds

| | |
|---|---:|
| Attorney's fees for dissolution of injunction | $ 600.00 |
| Court costs | 313.35 |
| 750,000 ft. of gum timber @ $4.00 per M | 3,000.00 |
| 60,000 ft. of ash timber @ $9.00 per M | 540.00 |
| Total damage to Oswalds | $4,453.35 |

### Damage to Dunbar

| | |
|---|---:|
| 750,000 ft. of gum timber @ $8.00 per M | $6,000.00 |
| 60,000 ft. of ash timber @ $21.00 per M | 1,260.00 |
| | $7,260.00 |
| Amount paid by Oswalds to Dunbar for release | 200.00 |
| Dunbar's lost profit | $7,060.00 |
| Miscellaneous expenditures included in lost profits | 818.00 |

On December 9, 1935, Judge C. C. Featherstone passed an order confirming the findings of fact as determined by the Referee, but holding that, inasmuch as the amount of damages suffered by the obligees in said bonds was so much greater than the penal sum of the bonds, to wit, $3,000.00, and respondents could only recover that amount, it would

not be necessary to consider the item of Court costs to which appellants excepted, and that judgment should be entered in the sum of $2,000.00 against J. J. Walker, plaintiff-appellant, and J. H. Warren, surety-appellant, and the sum of $1,-000.00 against J. J. Walker and T. B. Warren, sureties-appellants.

The appellants have filed twenty-two exceptions to the findings of the Special Referee, and thirteen exceptions to the order of Judge Featherstone, but limit the issues made by the exceptions to four points, stated as follows:

(1) Error in allowing attorney's fees as item of damage.

(2) Error in allowing Court costs as item of damage.

(3) Miscellaneous expenses.

(4) Error in allowing speculative pofits as item of damage, as follows:

(a) The profits were highly speculative on account of high water.

(b) Only damages allowable were $271.00 on each of first two bonds.

(c) The damages were speculative because respondents had no contract for sale of the timber.

(d) The undisputed evidence shows that all of the timber which Dunbar did not cut is still on the premises.

(e) Only one Oswald was an obligee in the bonds, and he cannot recover on behalf of the other Oswalds.

As to Point 1, it appears from the record that the sole purpose of the original action instituted by the plaintiff-appellant was to procure an injunction restraining the cutting of the timber on the tract of land involved in this litigation. The first restraining order was procured on March 12, 1928, and remained in force until March 20, 1928, on which date it was dissolved on motion of respondents' counsel. The second restraining order was made on March 31, 1928, and remained in force until the trial of the action on April 28, 1928, when Judge Bonham, after a verdict for

respondents, dissolved the second restraining order and dismissed the complaint. The third and last restraining order was issued on July 5, 1928, and, upon the termination of the original action on April 30 1931, it was dissolved by order of Judge E. C. Dennis.

Now, a reasonable sum as counsel fees for procuring the dissolution of an injunction may be allowed as damages to be recovered in an action on the injunction bond, provided the injunctive relief is not merely ancillary to the main issue.

In the case of *Livingston v. Exum*, 19 S. C., 223, Mr. Chief Justice Simpson, speaking for this Court, said: "Next as to the counsel fees. Mr. High, in his work on Injunctions, at Section 973-4, page 562, lays down the rule extracted from numerous cases cited in the notes, to be that reasonable compensation as counsel fees in procuring the dissolution may be allowed as damages to be recovered in an action on the injunction bond, but fees paid for defending the entire action to which the injunction was merely ancillary, can not. This seems to be the true rule."

It appears that the counsel fees paid in this case were for services rendered in dissolving the injunctions in an action seeking only injunctive relief, and it matters not whether the dissolution was accomplished by motion or the trial of the case on its merits, provided the injunctive relief was not merely auxiliary to the main issue, and it does not appear that such was a fact. This case was tried twice and once appealed to this Court; therefore we feel no hesitancy in holding that a fee of $600.00 was a reasonable one for the legal services rendered.

Appellants' exceptions raising this issue are overruled.

Appellants, by their second point, raise the question whether or not respondents can recover the sum of $313.35 allowed by the Referee as Court costs.

In the case of *Crawford v. Atlantic Coast Lumber Corporation*, 89 S. C., 456, 71 S. E., 1049, 1050, Mr. Justice

Woods, as the voice of this Court, said: "The remedy of injunction invoked by the plaintiff, the protection against damage afforded by the undertaking, and the power of the Court to ascertain the damages by reference, or otherwise, are all statutory, and are all interdependent; and it follows that the damages must be sought by the defendant in the same cause by enforcement of the undertaking, and that they are limited by the undertaking."

We have given this issue thorough consideration, and are constrained to hold that, inasmuch as the sum recoverable by respondents in this proceeding greatly exceeds $3,000.00, the penal sum of the three injunction bonds, irrespective of the item of Court costs, this matter, as held by the Circuit Judge, becomes academic and immaterial to the decision of this case.

The exceptions relative to this assignment of error are overruled.

As to Point 3, appellant earnestly urges that the items of miscellaneous damages, totaling $818.00, are not recoverable.

Both the referee and the Circuit Judge held that the respondent Dunbar was not entitled to recover for these items in addition to lost profits; the Circuit Judge, in his decree with reference to this item, having the following to say: "Also, the plaintiff and his sureties contend that the defendants are not entitled to an item of $818.00 for certain expenses incurred; but the Referee took care of this item, finding that these losses were sustained, but that the defendants cannot contend for this item and also for full profits, and that Dunbar suffered damages in the sum of $7,060.00 by reason of the losses of profits on timber and that the $818.00 of damages cannot be added to this loss of profits but must be considered as included therein; which shows fully that the exceptions of the plaintiff, as to this item, must be based on a misunderstanding of the findings of the Referee."

Under its fourth point, appellant urges that the profits allowed were speculative, and for this reason should not have been allowed. It was established by uncontradicted evidence that the Oswalds had entered into a contract for the sale of the gum and ash timber on the tract of land heretofore mentioned. They were to receive under said contract $4.00 per thousand stumpage for the gum and $9.00 per thousand stumpage for the ash. The preponderance of the evidence establishes that there was at least 750,000 feet of gum timber and 60,000 feet of ash timber. By these figures, a calculation of the loss under the contract price establishes that the Oswalds were damaged in the sum of $3,540.00; therefore they are entitled to recover this sum as lost profit, under their contract. *Moorer v. Andrews*, 39 S. C., 427, 17 S. E., 948.

As to the amount of damages suffered by the respondent Whitmarsh Dunbar in the loss of the timber on the tract of land hereinbefore mentioned, a careful analysis of the evidence discloses that he had a contract for the sale of the timber at a profit of $9.00 per thousand for the gum and $21.00 per thousand for the ash; that there was a strong market for this kind of timber at that time and that he would easily be able to dispose of it; that during the time that these injunctions were in force a portion of the timber which he had cut was washed away by flood water; and in September, 1928, a storm of most unusual intensity had blown down so many of the trees, and the price of timber had fallen so low, that it would no longer be profitable to attempt to cut the timber, but, if the injunctions had not been in force, the timber could have been moved before the September storm.

The testimony discloses that there were 750,000 feet of gum timber and 60,000 feet of ash timber which, at a profit of $9.00 on the gum and $21.00 per thousand on the ash, amounts to $7,060.00 lost profits. The timber could easily have been disposed of because there was a ready market for

it, and Dunbar had a contract for the sale of same at the above-quoted prices.

A most careful review of the testimony fails to persuade us that the findings of fact by the Referee in this respect, concurred in by the Circuit Judge, are against the preponderance of the evidence, and, in the absence of such showing, this Court will not reverse the decision of the lower Court. *McLure v. Goodwin*, 101 S. C., 362, 85 S. E., 900; *Miller v. Smith et al.*, 103 S. C., 307, 88 S. E., 354; *Ellis v. Johnson et al.*, 143 S. C., 325, 141 S. E., 564.

The exceptions relating to this assignment of error are overruled.

It appears that the title to the timber involved was not vested in E. H. Oswald alone, and that he owned only an undivided interest in same, but his exact interest is not determinable from the record. It is true that the deed contract from the Oswalds to the respondent Dunbar shows that it was signed by four Oswalds, including E. H., but it also refers to "E. H. Oswald and brothers and sisters," so we must conclude there are at least five Oswalds. E. H. Oswald, now deceased, was the only vender who was a party to this action and to whom the injunction bonds were made payable. Recovery on those bonds of the combined damages of the respondents cannot exceed the penalty of the bonds of $1,000.00 each, and this, it will be seen, has been held by the Referee and Circuit Judge. Therefore the judgments to be entered against the appellants will have to be in the proportion that $7,060.00 and the interest of the personal representatives of E. H. Oswald have in the damages of all of the Oswalds of $3,540.00 bear to $1,000.00 and $2,000.00, respectively.

The case is remanded to the Circuit Court for the purpose of ascertaining the interest of the personal representatives of E. H. Oswald, and that judgments may be entered as hereinabove indicated.

With the modification herein made, the order and judgment appealed from is affirmed. .

MR. CHIEF JUSTICE STABLER and MR. JUSTICE FISHBURNE concur.

MR. JUSTICE BONHAM was disqualified.

MR. JUSTICE CARTER did not participate.