**SHEALY'S, Inc., Plaintiff,**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY,
Defendant.**

Civ. A. No. 3324.

United States District Court,
E. D. South Carolina.
Columbia Division.

Nov. 24, 1954.

Frank A. Graham, Jr., Columbia, S. C., for plaintiff.

Nelson, Mullins & Grier, D. W. Robinson, Jr., Columbia, S. C., for defendant.

WILLIAMS, District Judge.

This case was tried before me and a jury in the Columbia Division at the November, 1954 term and resulted in a verdict being directed for the plaintiff in the amount of $66. This opinion is filed to set forth the reasons for such action by the Court.

The action was brought by plaintiff in the Court of Common Pleas for Richland County, South Carolina, against Southern Bell Telephone and Telegraph Company to recover damages in the sum of $19,817.63, which plaintiff alleges it sustained as a result of the defendant's breach of a contract for the publishing of an advertisement of the plaintiff in the May, 1951 issue of defendant's Telephone Directory for Columbia, South Carolina. The action was removed to the United States District Court for the Eastern District of South Carolina by defendant on the ground that the suit involved a controversy wholly between citizens of different states and that the amount in controversy exceeded the sum of three thousand dollars, exclusive of interest and costs.

Defendant thereafter filed its answer in the Federal Court admitting that it had agreed to publish plaintiff's advertisement in the May, 1951 issue of its Columbia, S. C., telephone directory and that the advertisement was omitted from said directory through error, but denied that plaintiff suffered any actual damages as a result thereof. It thus appears from the pleadings that the breach of the contract sued on was admitted and the only issue was the amount of damage, if any, which plaintiff had sustained as a result of defendant's breach of the contract.

At the commencement of the trial plaintiff asked, and was granted, leave to amend its complaint so as to reduce the amount of actual damages claimed to the sum of $2,635.89, the reduction apparently being occasioned by the discovery by the plaintiff of certain errors in its calculations as to its claim of business losses.

When the amendment to the complaint was allowed, although there was no motion to dismiss by either party, the Court considered whether the reduction of the amount of damages claimed by the plaintiff to a sum below the jurisdictional amount might have deprived the Court of jurisdiction. I have concluded, however, that the case was properly removed from the State Court to this Court, and that the voluntary reduction by the plaintiff of the amount which it sought to recover does not defeat the present jurisdiction.

At the time plaintiff instituted this action in the State Court it was claiming in good faith the amount of damages set forth therein. The damages sought to be recovered were unliquidated as to amount and the fact that a subsequent audit of the plaintiff's books disclosed an inability to prove damages in the amount of the claim and resulted in a voluntary amendment of the complaint does not affect the original claim and does not require a remand of the case to the State Court.

In St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 590, 82 L.Ed. 845, the Court said:

"The intent of Congress drastically to restrict Federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot re-

cover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

"What already has been said, and circumstances later to be discussed lead to the conclusion that a dismissal would not have been justified had the suit been brought in the federal court. The principles which govern remand of a removed cause more urgently require that it should not have been remanded. In a cause instituted in the federal court the plaintiff choses his forum. He knows or should know whether his claim is within the statutory requirement as to amount. His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit. Indeed, this is the court's duty under the Act of 1875. In such original actions it may also well be that plaintiff and defendant have colluded to confer jurisdiction by the method of the one claiming a fictitious amount and the other failing to deny the veracity of the averment of amount in controversy. Upon disclosure of that state of facts the court should dismiss.

"A different situation is presented in the case of a suit instituted in a state court and thence removed. There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end. For if such were the purpose suit would not have been instituted in the first instance in the state but in the federal court. It is highly unlikely that the parties would pursue this roundabout and troublesome method to get into the federal court by removal when by the same device the suit could be instituted in that court. Moreover, the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove. Of course, if, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount, removal will be futile and remand will follow. But the fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim, or the circumstance that the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement, will not justify remand. And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."

■ Plaintiff's testimony, which must be taken as true upon a motion for directed verdict, was to the effect that plaintiff is a distributor of Mack Trucks for the counties of Richland, Kershaw, Fairfield, Calhoun, Orangeburg, Bamberg, Lexington, Sumter, Barnwell and Newberry, and maintains its principal place of business in the City of Columbia, South Carolina. It had for several years prior to the omission of this advertisement from the May, 1951 telephone directory, published similar advertisements in preceding issues and it likewise continued to publish such advertisements in the telephone directories which were

issued subsequent to the May, 1951 issue. It sought to prove damages by showing loss in business for the months in which its advertisement was not published.

Plaintiff does not contend that there was a loss in profits from business in general, but only that a loss of profits occurred with regard to the business it would have obtained from transient trade, i. e., business obtained from truck owners and operators who were not located in the counties of South Carolina in which plaintiff was the designated Mack Truck distributor. To that end it introduced a statement which had been compiled from its books which showed that the gross sales for parts and labor on business handled for truck owners and operators who were not located in the counties which plaintiff served as a distributor for the nine months period from May, 1951 through January, 1952, when plaintiff's advertisement did not appear, amounted to $14,730.78, whereas such gross sales for the same months of 1950, when plaintiff's advertisement did appear, amounted to $16,377.81. This difference between the gross sales for the two periods amounted to $1,647.33. The plaintiff's president testified that its business, except for the sales and service to its transient customers, for the period in 1951 in which the advertisement was omitted from the directory was approximately 60 per cent above its business for the same period in 1950 and that, therefore, had the advertisement been published, its transient business would have increased in approximately the same ratio, and that hence plaintiff's total loss of profits amounted to $2,635.-89.

Plaintiff also offered to prove by its auditor that the best and proper method of determining the loss which the plaintiff sustained as a result of defendant's failure to publish the advertisement in question was by comparing the total gross receipts for the nine months period when plaintiff's advertisement did not appear in the telephone directory with the total gross receipts for the same

period of time for the year 1950 when plaintiff's advertisement did appear. The Court permitted plaintiff to make an offer of such proof, but concluded that it constituted no proper basis for determining the amount of loss, if any, caused to plaintiff by defendant's breach of its contract, and therefore excluded it.

In essence, plaintiff's claim is this. The gross sales from the business which it received from transient truck owners and operators for the nine months period during which the advertisement was omitted from defendant's directory was less than the gross sales for the period of nine months for the preceding year when the advertisement was published, and therefore the loss of profits is attributable to the admitted omission of the advertisement from the directory. Plaintiff did not allege, nor did it prove the specific loss of a single sale or service operation, but bases its entire claim upon the conjecture that there were such losses and that the losses would not have occurred had the advertisement been inserted in the directory.

█ It is of course true that loss of profits constitutes a proper element of damage where such loss is the direct result of defendant's wrongful conduct and such profits are capable of being shown with a reasonable degree of certainty. Charles v. Texas Co., 199 S.C. 156, 18 S.E.2d 719; Lester v. Fox Film Corporation, 114 S.C. 533, 104 S.E. 178.

█ In other words loss of profits constitutes a proper element of damage provided it can be established that the profits claimed to have been lost would reasonably have been realized except for defendant's wrongful conduct. The fact of damage, however, must be proved to a certainty. Palmer v. Connecticut Ry. & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336; Charles v. Texas Co., 199 S.C. 156, 18 S.E.2d 719.

█ Plaintiff has shown that it did not make as much gross profits from its transient business during the nine months period during which its advertisement was omitted from defendant's

telephone directory as it did during the preceding nine months when the advertisement was published in the preceding directory. The plaintiff's difficulty, however, lies in the fact that it has failed to show that its gross sales would have been any greater in amount had the advertisement in fact been published.

In United States v. Huff, 5 Cir., 1949, 175 F.2d 678, 680, the plaintiffs had leased land to the Government for a target range. They claimed damages because the Government had destroyed fences and as a result they had lost sheep and goats. The Appellate Court permitted recovery for the cost of repairing the fences but denied recovery for the loss of sheep and goats because there was no testimony as to specific dates of loss of any sheep or goats, there was no evidence of their age, weight or condition, and the mere fact that there was a certain number of goats at an earlier date and a lesser number at a later date was not sufficient. The Court said:

"It therefore becomes patent that the evidence as to the loss of these animals in each case fails to rise above mere speculation and guess.

"While it may be inviting to approve the trial court's findings and allow at least a partial recovery for such losses, it remains our solemn duty under this evidence to disallow these unproved claims, as it is well settled that speculative damages are not recoverable. It was incumbent upon these plaintiffs to adduce some clear and convincing proof of specific losses resulting solely from the Government's failure to repair and maintain the fences, and this they have signally failed to do."

In Addison-Miller, Inc., v. U. S., 70 F.Supp. 893, 900, 108 Ct.Cl. 513, complaint was made that the United States had failed to supply labor to one of its contractors and had failed to give the contractor permission to employ other labor. The Court found that the Government had violated its obligation to the contractor but held that it could not speculate as to the fact of the amount of damages on evidence of estimates of what the reasonable labor cost would have been as compared with what it actually was. The Court said:

"It is undoubtedly the rule, of course, as plaintiffs say, that uncertainty as to the amount of the damage does not preclude recovery where the fact of damage is clearly established. (Citing cases.) However, it is equally well settled that we cannot indulge in pure speculation. There must be some foundation for the judgment rendered. All of the cases holding that the amount of the damage need not be capable of mathematical computation, nevertheless recognize that there must be some reasonable basis for ascertaining the amount of the damage."

Another interesting case in point is William H. Schwanke, Inc., v. Wisconsin Telephone Co., 1929, 199 Wis. 552, 227 N.W. 30, 31, 68 A.L.R. 1320. There, the defendant printed in its directory the regular number for the plaintiff's jewelry store, but through error also printed the same number for another company. Plaintiff claimed consequent telephone difficulties caused loss of trade in December, 1926, and January 1927. The principal evidence was falling off of gross receipts in those months as compared to prior years. The jury awarded $600 for loss of business, and on appeal this was set aside. On this item of damages the Court has this to say:

"Many other similar comparisons may be made, but the foregoing is sufficient to indicate what may be taken to be common knowledge that there are ordinarily fluctuations in business such as plaintiff's when the sales for any month are compared with those of the same month for other years. * * * This evidence goes no further than to indicate that there was a falling off of sales in December and January, during which time he had unsatisfactory telephone service. But it

is incumbent upon the plaintiff to establish that the falling off in sales was attributable to the unsatisfactory telephone service.

\* \* \* \* \*

"The record is barren of any evidence to indicate the loss of a single sale by reason of the error in the telephone book. The evidence furnishes no justification for a conclusion that plaintiff's sales were diminished by reason of such error. The amount awarded for this item of damages cannot stand."

The injury suffered, if any, by the plaintiff was the loss of such profits as would have resulted from the publishing of the advertisement. Whether the plaintiff's gross profits would have increased if the advertisement had been published is a matter of mere speculation and conjecture. Since the plaintiff has failed to introduce any evidence even tending to show that its gross sales would have been increased had the advertisement been published, the mere fact that the gross profits for a preceding period were in excess of the gross profits for the period during which the advertisement was omitted from the directory is insufficient to show that the decrease in gross profits was the proximate result of the defendant's failure to publish the advertisement. Their causal relation to the breach is purely speculative.

In the cases bearing on the present question the courts have invoked the rule that profits on new business which might have been drawn to an advertiser are too speculative to be considered as an element of damage.

Thus, in Tribune Co. v. Bradshaw, 1886, 20 Ill.App. 17, it was held that no recovery could be had, in an action for the failure of a newspaper publisher to publish an advertisement according to contract, for loss of profits on business which might have been attracted to the plaintiff by his advertisement. The Court said:

"His damages then consist, first, of the contract price paid; and, second, in a deprivation of the advantages or profits which he would have realized as a result of the advertisement if it had been published. There is no other conceivable loss or damage to which he has been subjected by reason of the nonperformance of the defendant's contract. Of these two items the first is fixed, certain, and proximate, while the second is merely speculative and remote, and therefore incapable of being estimated or made the subject of a recovery at law."

In a similar case, Stevens v. Yale, 1897, 113 Mich. 680, 72 N.W. 5, 6, the Court, in reaching the same conclusion, said:

"We need not discuss the question of the validity of this contract. If it be treated as valid, and it be admitted that there was a breach of the contract by the defendant, the damages sought to be recovered were speculative. The injury suffered, if any, was a loss of such profits as would have resulted from advertising,—a matter of mere conjecture, depending upon the number who might read and act upon the advertisement. \* \* \* We have held in several cases that loss of profits may be recovered where the loss of profits and their amount can be shown with certainty. But here the effect of this failure to advertise is most uncertain, and the circuit court was correct in holding that such damages were not recoverable."

See also Eisenlohr v. Swain, 1860, 35 Pa. 107, 78 Am.Dec. 328.

In Winston Cigarette Mach. Co. v. Wells-Whitehead Tobacco Co., 1906, 141 N.C. 284, 53 S.E. 885, 889, 8 L.R.A., N.S., 255, the plaintiff sued for damages for the failure of the defendant to exhibit the former's machine at the St. Louis Exposition of 1904, as he had contracted to do. The plaintiff contended that recovery should be allowed for loss of profits on sales which might have resulted from his machines being exhibited. The Court declared that this

loss was too conjectural to be considered, and, in refusing to apply the rule for measure of damages contended for, said:

"The rule would be in the highest degree unfavorable to the interests of the community, and the subject would be involved in utter uncertainty. The computation would proceed upon contingencies, and would require a knowledge of markets to and exactness in point of time and value which would sometimes present embarrassing obstacles. Much would depend upon the vigilance and activity of the party who it is supposed would have made the profits, and much upon the momentary demand and other considerations purely speculative. After all, it would be a mere calculation upon conjectures and not upon facts. * * * Any such estimate would be based upon imaginary and uncertain profits depending upon a variety of circumstances, the failure of any one of which would subvert the whole calculation, and for this reason they would be too remote and indeterminate to enter into the measure of damages."

In Murray v. Texas Company, 172 S.C. 399, 174 S.E. 231, 232, the plaintiff claimed damages for loss of trade in his "store business" which he operated in conjunction with a filling station. The defendant had been negligent in installing and in failing to repair a defective gasoline tank and plaintiff's evidence showed that before he began to have trouble with the equipment installed by the defendant, he was clearing about twenty dollars each week, but that after the trouble started his business began to fail and that he finally had to close his store. The Court held, first, that the damage claimed by plaintiff to have resulted from defendant's negligence was not within the contemplation of the parties at the time the contract was entered into, and:

"Furthermore, the expected profits of the store business, as testified to, were too uncertain and speculative to be made the basis of a recovery.

We think, therefore, that this alleged element of damages should not have been allowed, and that the court was in error in permitting the jury to consider it."

In Harmon v. Western Union Telegraph Co., 65 S.C. 490, 43 S.E. 959, 960, the action was based upon failure to deliver a telegram from J. C. Fort addressed to plaintiff and reading:

"Can you come here immediately build two or more houses by contract. Answer."

The damages claimed by plaintiff were for the profits he would have made if he had obtained the contract referred to in the telegram. However, the plaintiff failed to definitely show that if he had received the telegram in time he would have obtained the contract. The Circuit Court ordered a nonsuit and upon appeal it was affirmed. Judge Woods, delivering the opinion of the Court, said:

"We think the proof was entirely inadequate to sustain the action. Sitton v. Macdonald, 25 S.C. 68; Moorer v. Andrews, 39 S.C. [427,] 430, 17 S.E. 948; 8 Am. & Eng. Encyc. 2 Ed., 620; Shearman & Redfield on Negligence, § 745. The telegram itself was merely an invitation to come and contract for houses, and whether the terms would have been agreed on and the contract made was altogether conjectural. Whether any damage would result depended on this contingency, which was too uncertain to be made the basis of the judgment of a court."

█ The South Carolina Court is firmly committed to the doctrine that the plaintiff may not recover for a breach of contract or breach of duty by a public utility unless the plaintiff assumes the burden of showing that such breach was the proximate cause of the loss.

In South Carolina Peach Growers' Association v. Western Union Tel. Co., 149 S.C. 214, 146 S.E. 873, 874, the Court said:

"In other words, in so far as the evidence disclosed, the alleged loss

was not the proximate consequence of the telegraph company's negligence, because, even if the company had performed its duty, there was no proof that the loss would not still have occurred, or that the object of the message would have been accomplished. 37 Cyc., 1758; Capers v. Western Union Telegraph Co., 71 S.C. 29, 50 S.E. 537; Harmon v. Western Union Telegraph Co., 65 S.C. 490, 43 S.E. 959; Davies v. Western Union Telegraph Co., 93 S.C. 318, 76 S.E. 820."

■ The fact that the plaintiff's accountant advanced it as his professional opinion that loss of profits in a business could properly be proved in the method adopted by the plaintiff is of no significance. The witness has the right to follow that method as a matter of proper accounting theory if he chooses to, but he cannot change the rules of evidentiary law by which I am bound. Cf. U. S. v. Griffith, Gornall & Carman, Inc., 10 Cir., 210 F.2d 11, 13.

■ The plaintiff has failed to prove damages from loss of business under the rule of these authorities so it is entitled to no recovery on that account. It had paid to the defendant the sum of $66 as the price of publishing the advertisement and it is, of course, entitled to recover that amount when the advertisement was not published. It has proved no further damages, however, so a direction of verdict in its favor in that amount was required.