BULOVA WATCH COMPANY, Inc.,
Plaintiff,

v.

ROGERS-KENT, INCORPORATED,
Defendant.

Civ. A. No. 4627.

United States District Court
E. D. South Carolina,
Columbia Division.

Feb. 26, 1960.

Turner, Padget & Graham, Columbia, S. C., for plaintiff.

Isadore S. Bernstein, Columbia, S. C., for defendant.

TIMMERMAN, Chief Judge.

I have for consideration objections to the Special Master's Report in this case, which was brought to restrain what the

plaintiff contended were violations by the defendant of the Fair Trade Statute of South Carolina (Sections 66–91 through 66–95 of the South Carolina Code of Laws 1952). There was and is no federal question involved. As may be seen, by reference to the record herein, the Court, on plaintiff's motion, granted a preliminary injunction enjoining the defendant from selling Bulova products for less than the Fair Trade prices upon the plaintiff filing a bond in the sum of $25,000 to protect the defendant from business loss and costs in the event it should be found that the injunction was improvidently issued.

After the defendant had successfully prosecuted an action for a declaratory judgment in the State Courts, resulting in the holding of the State's Supreme Court that the Fair Trade Statute was unconstitutional, this case was referred to James F. Dreher, Esquire, as Special Master, whose report recommends "(1) That the defendant have summary judgment entered in its favor; and (2) That the defendant recover under the bond the sum of Four Thousand Seven Hundred and Fifty ($4,750.00) Dollars".

The Special Master's report is entirely satisfactory to the Court and it is adopted to the same effect as if the Court had been the original author of it.

Let judgment be entered for the defendant in accordance with the Special Master's recommendations. It is so ordered.

### Report of Special Master
### James F. Dreher.

The judgment to be entered herein shortly is the culmination of an action brought on December 10, 1954, by Bulova Watch Company, Inc. to enjoin the defendant, a so-called "discount house" in Columbia, from selling Bulova watches below the "fair trade" price set by an agreement between Bulova and a South Carolina retailer other than the defendant. At that time the South Carolina Fair Trade Statute (Sections 66–91 through 66–95 of the 1952 Code) permitted the enforcement of such agreements against non-signers. Only the diversity of the citizenship of the parties gave the Federal Court jurisdiction.

The plaintiff's motion for a preliminary injunction was heard by Judge TIMMERMAN on December 17, 1954, and this hearing resulted in the Court's granting the motion on the condition that the plaintiff protect the defendant by the filing of a $25,000 bond. Upon the bond being filed, the Court issued its formal order of December 21, 1954, enjoining the defendant from selling the plaintiff's products below the fair trade prices. The condition of the bond is that the plaintiff and its surety "will pay all costs and disbursements that may be decreed to the defendant, Rogers-Kent, Incorporated, and the damage that it may sustain by reason of the preliminary injunction if the same be wrongful or without sufficient cause not exceeding said Twenty-five Thousand ($25,000.00) Dollars."

The cause was never called for hearing on its merits. Nor were several other injunction suits against Rogers-Kent which had been brought in the Federal Court at about the same time. Instead, counsel for Rogers-Kent applied himself to an effort to have the South Carolina courts declare the Fair Trade Statute in violation of the South Carolina Constitution. On January 6, 1955, he commenced in the Richland County Court the action of Rogers-Kent v. Westinghouse Electric Corporation for a declaratory judgment that the Statute was unconstitutional. The County Court so held in an order filed on July 7, 1955, but Westinghouse withdrew a noted appeal and the Supreme Court denied Rogers-Kent's motion to be permitted to docket the case and have the constitutional question decided. The Court's order denying that motion was filed on October 13, 1955. Rogers-Kent immediately commenced a similar action against General Electric Corporation and the Richland County Court repeated the holding of unconstitutionality it had made in the Westinghouse case. General Electric perfected its appeal and the action culminated in the decision of the South Carolina Supreme Court reported in Rogers-Kent,

Inc. v. General Electric Co., 231 S.C. 636, 99 S.E.2d 665, holding the South Carolina Fair Trade Act violative of the South Carolina Constitution, art. 1, § 5.

This decision was handed down by the Supreme Court on August 26, 1957, and shortly thereafter the defendant filed in the present cause its motion for summary judgment and, in the event the summary judgment was granted, that the defendant have judgment against the plaintiff on its injunction bond for the "costs, disbursements and damages" which the defendant has suffered because of the wrongful injunction. The District Court's order of July 2, 1958, appointed me Special Master to pass upon the issues raised by that motion.

I have taken, at two hearings, the testimony offered by the parties and have received voluminous exhibits. I have also been furnished with excellent briefs by counsel for both parties. I have frankly had difficulty in resolving some of the legal issues and I feel that my thoughts on the case as a whole may be brought better into focus, for the benefit of the Court and counsel, if I should state my summary of the case before making formal findings.

First of all, I do not believe that I have any discretionary authority as Special Master to refuse to award the defendant whatever damages it may have suffered as a result of this injunction. The Court which granted the injunction and required the bond may have a discretion to deny damages to an enjoined party if the injunction was taken out in good faith, or the law was uncertain or for some other equitable cause; but I do not feel that I have any discretion in the matter or any right to recommend a discretionary decision by the Court.

In any event, whether I am controlled by purely legal considerations or have a discretion to examine, I find that the defendant should recover its attorneys' fees expended in accomplishing the setting aside of the injunction and this despite the fact that a great part of the litigation to that end was conducted in different causes in a different court.

I think that South Carolina decisions rather than federal decisions govern the question of whether attorneys' fees for dissolving an injunction may be recovered under the injunction bond.

Aside from its attorneys' fees, I do not find that the defendant has proved itself entitled to any recovery under the bond. My understanding of the law is that the amount of damages need not be proved with any great exactitude if the "fact of damage" has been proved to a certainty. Charles v. Texas Co., 199 S.C. 156, 18 S.E.2d 719; Shealy's Inc. v. Southern Bell Telephone & Telegraph Co., D.C.S.C., 126 F.Supp. 382; Palmer v. Conn. Ry. & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336. In my opinion, however, the defendant has failed to prove with any certainty at all the "fact" of its damage, i. e., that the decline and eventual failure of its business was the result of this injunction. The defendant has not sought to found its case upon its having lost sales of plaintiff's products. It has not proved the loss of a single watch sale, although sales must have been lost.

It is further my opinion that in any event the defendant's effort to prove its dollar and cents loss is speculative to an extreme and cannot be made the basis of a judgment.

With my overall decisions thus stated, I will state briefly my Conclusions of Law and Findings of Fact.

### Conclusions of Law

A. This Court has jurisdiction of the cause under 28 U.S.C.A. § 1332, because of the diversity of the parties.

B. The South Carolina Fair Trade Act (Sections 66–91 through 66–95 of the Code of Laws for South Carolina for 1952) violates the South Carolina Constitution and is therefore ineffective; Rogers-Kent, Inc. v. General Electric Co., 231 S.C. 636, 99 S.E.2d 665. Summary judgment should therefore be entered in favor of the defendant.

C. The unconstitutionality of the Act under which injunction herein was granted being established, the condi-

tion of the bond has been breached because, in the language of the bond, the injunction is automatically shown to have been "wrongful or without sufficient cause". 28 Am.Jur. 516, Injunctions, Sections 342 et seq.

■ D. A Special Master has no discretion to refuse recovery on an injunction bond.

In Greenwood County v. Duke Power Co., 4 Cir., 1939, 107 F.2d 484, 489, 131 A.L.R. 870, the Court did say "that the awarding of damages under such a bond is not a matter of right, but one resting in the sound discretion of the court"; but the statement appears to be dictum inasmuch as the Court had just held that the enjoined party in the case before it had suffered no damages. Passing over that, however, an examination of the cases relied upon by Judge Parker in making this statement, and especially Russell v. Farley, 105 U.S. 433, 26 L.Ed. 1060, shows that the theory of the rule is that since the granting of an injunction and the imposing of conditions upon it are matters within the discretion of the Court originally, "the court should have the power to mitigate the terms imposed, or to relieve from them altogether, whenever in the course of the proceedings it appears that it would be inequitable or oppressive to continue them."

This is a good practical view and under it I have no doubt that Judge TIMMERMAN can weigh the equities of the parties when the matter comes back to him and refuse to allow damages under this injunction bond, just as he could, at any time during the pendency of the cause, have relieved the plaintiff from the originally imposed condition of filing the bond. A Special Master cannot, however, supersede the requirement of a bond or, as a matter of discretion, eliminate damages proven against it. His view is limited to the fact that a bond was required by the District Court, has not been superseded and calls for the recovery of damages if the injunction was wrongfully issued.

■ E. Under the South Carolina decisions, a reasonable sum as attorneys'

fees for procuring the dissolution of an injunction may be recovered as damages in an action on the injunction bond. Walker v. Oswald, 181 S.C. 278, 186 S.E. 916; Livingston v. Exum, 19 S.C. 223, 164 A.L.R. 1088.

■ F. Although prior to the decision in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 the federal decisions refused to allow attorneys' fees in dissolving an injunction as damages under the injunction bond, I conclude that the South Carolina decisions are controlling.

This cause is in the federal court only because of diversity of the citizenship of the parties. It is concerned primarily with the validity of a South Carolina Statute under the South Carolina Constitution. To hold that attorneys' fees could be recovered if the case had been brought in the South Carolina court but not when the place of residence of one of the parties gave a federal court jurisdiction would seem to cut across the whole philosophy of Erie R. Co. v. Tompkins. See Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, and Bernhardt v. Polygraphic Company of America, Inc., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199.

The plaintiff has cited a rule, which I am sure is well founded, to the effect that where an injunction bond is issued in pursuance of a federal statute Erie R. Co. v. Tompkins does not apply because a federal question is involved. It argues that this rule should be applied here because the injunction bond was ordered by Judge TIMMERMAN pursuant to the mandate of Rule 65(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A.—the equivalent of a federal statute.

I do not believe that it is entirely accurate to say that this preliminary injunction bond was given "in pursuance" of that Federal Rule. Rule 65(c) is framed in mandatory terms, but it was held in Urbain v. Knapp Brothers Mfg. Co., 6 Cir., 1954, 217 F.2d 810, that it was within the sound discretion of the trial judge as to whether to require a bond in issuing a temporary restraining

order despite the apparently mandatory language of Rule 65(c). The requirement of an injunction bond on the granting of a preliminary injunction is traditional under both the state practice and the federal and I have no doubt that a State Court Judge in the same case would have required a similar bond. I cannot then believe that the existence of Rule 65(c) requires that every preliminary injunction bond filed in the Federal Court should have its coverage limited by pre-*Erie* federal decisions contrary to the controlling state law.

■■■ I would accept as applicable law on this point the following quotation from 28 Am.Jur. 522, Section 346:

"Under the rule of the Tompkins case, the federal courts, at least in all cases in which their jurisdiction is invoked merely upon grounds of diversity of citizenship, will be bound by the decisions of the state courts upon the question of recoverability of attorneys' fees in actions on injunction bonds."

It occurs to me in this connection that there is no reason why the defendant should not have merely taken its summary judgment in this court and sued on the bond in the state court. If it had done so, it clearly would have been entitled to its attorney's fees. The language of the bond gives it its rights, not Rule 65(c); and the language of a contract certainly means the same in both courts.

■■■ G. I conclude that there is no legal objection to the defendant's recovering the attorneys' fees which it expended in procuring the dissolution of the injunction in the fact that the fees were largely earned by procuring an adjudication in the South Carolina court that the Fair Trade Law was unconstitutional. It is my opinion that if a litigant in the federal court is enjoined there under the authority of a State Statute which he believes to be in violation of the State Constitution and he reasonably concludes that the most expeditious determination of the State constitutional question would lie in the institution of a new action for a declaratory judgment in the State Court rather than to attempt to force a conclusion in the federal litigation, his attorneys' fees incurred in establishing the unconstitutionality of the statute and therefore the error in the granting of the preliminary injunction should be recoverable on the injunction bond. I shall make a finding of fact to the effect that the course of action which defendant's counsel pursued in obtaining the state court adjudication of unconstitutionality was a reasonable one, but while considering here the legal aspects of the matter I should point out that I conclude from the decisions that had counsel attempted to get a final ruling on his constitutional question in the federal court, he might have been met with a refusal by the District Court, the Court of Appeals or the Supreme Court to rule on the state constitutional question until the state court had ruled upon it. See Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, and Union Carbide & Carbon Corp. v. White River Distributors, D.C., 118 F.Supp. 541. Had this transpired, a considerable expenditure of effort and money would have been wasted, so what defendant's counsel did may properly be considered as an effort on his part to minimize the damages eventually recoverable against the plaintiff.

### Findings of Fact

■■■ 1. The defendant's proof as to the monetary damage it suffered in its loss of business due to the injunction granted in this cause is too speculative and conjectural to support a judgment.

2. Even the "fact of damage" has not been proved with any certainty. The defendant pitches its entire claim for damages due to loss of business upon the proposition that the existence of the preliminary injunction changed the entire character of its operation and converted a business success into a failure. It is certain that the business did eventually fail, but to say that it failed because of an injunction against the sale of Bulova watches is not possible. The defendant says that its so-called members lost faith

in its ability to fulfill its promises of brand merchandise at less than fair trade prices. Perhaps this is true but defendant has not proved it to be. Actually, I doubt very much if the existence of this injunction had any substantial effect upon the attitude of the defendant's potential customers toward it. From the inception of its operations, the defendant had made much of its position as a fighter of the consumer's battle against the Fair Trade forces. It gave wide publicity to Bulova's letter threatening Fair Trade prosecution (Ex. 2, R–11) and told the public that it would resist all such efforts. With the battle lines arrayed, it should not have surprised anyone that a preliminary injunction was sought by Bulova and was obtained. Defendant could not have expected the public to believe that the Fair Trade advocates were entirely impotent. The law was on the South Carolina books; it was presumably valid and presumably enforceable. If defendant's customers were to give up hope when one of the Fair Trade companies obtained a preliminary injunction, they had very little faith in the fighting abilities of their champion. The defendant itself took no such defeatist attitude when the injunction was obtained; it promised to fight it and did so. It did so very effectively.

There were a number of factors which could have caused the failure of the defendant's business. There was a defalcating employee. The location of the store may not have been good. Competition from other merchants may have taken customers. The fact that the business started with a boom is understandable. I assume that any new type of business would normally start out with some success, particularly in the weeks just before Christmas.

It is interesting to note that although Fair Trade has been dead in South Carolina for a year and a half no discount house of the type planned by the defendant has to my knowledge come into successful operation.

3. Attacking the South Carolina Fair Trade Statute in the State Court rather than continuing the litigation in the Federal Court was, in my opinion, a wise course and in pursuing it the defendant was not only pursuing its own purposes in the most efficient manner, but was also, as it turned out, minimizing the damages which it would seek under the injunction bond.

 4. An attorney's fee of $4,750 for the services rendered by the defendant's counsel in accomplishing a dissolution of the injunction is reasonable and proper.

Upon the basis of the preceding Findings of Fact and Conclusions of Law, I would recommend to the Court:

(1) That the defendant have summary judgment entered in its favor; and

(2) That the defendant recover under the bond the sum of $4,750.